**TULSA HOSPITAL ASS'N v. JUBY.**

No. 8979—Opinion Filed July 23, 1918.

Rehearing Denied Oct. 22, 1918.

(175 Pac. 519.)

1. **Appeal and Error—Conduct of Court—Remarks.**

Remarks of the trial judge during the trial of the cause will not constitute reversible error. unless it appears that such remarks are prejudicial to the rights of the complainant.

2. **Same--Preservation of Exceptions.**

In order to predicate error on the remarks of the trial judge during the trial, exceptions must be taken to the remarks at the time they are made.

3. **Appeal and Error—Review—Questions of Fact.**

The weight to be given the evidence is a matter left to the jury, and a verdict based on conflicting evidence will not be disturbed, when the evidence reasonably tends to support the verdict.

4. **Hospitals—Personal Injury—Degree of Care.**

A hospital that is conducted for private gain receives patients under an implied obligation that it will exercise ordinary care and attention for their safety, and such degree of care and attention should be in proportion to the physical and mental ailments of the patient, and the question whether or not such requirements have been met presents an issue of fact to be determined by the jury.

(Syllabus by Davis, C.)

Appeal from District Court, Tulsa County; W. J. Campbell, Special Judge.

Action by Lottie Juby against the Tulsa Hospital Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Dillard, Allen & Dillard, for plaintiff in error.

Robinson & Mieher, for defendant in error.

Opinion by DAVIS, C. This cause of action comes here for hearing from the district court of Tulsa county, Okla. We will refer to the respective parties as they appeared in the trial court. The defendant is a private corporation, conducting a hospital in the town of Tulsa, Okla., for private gain. On or about the 15th day of February, 1915, the plaintiff, Mrs. Lottie Juby, was taken to said hospital for the purpose of being operated on for appendicitis. When she arrived at said hospital, she was a short time thereafter operated on by Dr. A. M. Houser. It was discovered during the operation that the patient was suffering from an affected gall bladder, and that in addition to an affected gall bladder that she had an affected appendix, which was removed during said operation. After the operation the patient was placed in room 43, under the care of a special nurse. On or about the 20th day of February, 1915, a heavy rain fell, and the roof over the room where the patient was located leaked, to the extent that the blankets on the bed where the patient was lying were wet. There is a conflict in the evidence as to the extent that the bed was wet. The evidence on the part of the plaintiff is to the effect that the bed was wet from the foot to a distance of about two-thirds of the length of the bed, and that all the covers on the bed were wet, and also the gown of the plaintiff; that the plaintiff awoke about 5:30 o'clock in the morning; that she was awakened by the water falling in her face. The evidence shows that the special nurse was sleeping on a cot in the same room with the plaintiff, and that when plaintiff discovered that her bed and clothes were wet that she attempted to wake the nurse and inform her of her condition; that she had considerable difficulty in awakening the nurse, but that when said nurse was awakened that she secured some dry blankets and changed them for those that were on the bed, but the nightgown in which plaintiff was sleeping and also the sheets on the bed were not changed until 8:30 or 9 o'clock on the same morning. There is a conflict in the testimony with reference to this question. The plaintiff testified that she requested that a change be made in her clothes, and also that the

sheets be changed, and that the nurse neglected to make said change until the regular time, which was some two hours after the blankets had been changed. The evidence on the part of the plaintiff shows that she became chilled from said wet bedding, and that her condition grew worse, and that about five days thereafter pneumonia developed; that she suffered for a long time from pneumonia, and incurred large expenses by reason thereof.

The allegations of negligence on which the plaintiff sought to recover are that the defendant was negligent in failing to provide the plaintiff with a suitable and safe place, free from danger, and allowing the roof over the room occupied by said plaintiff to remain in a defective condition, and to permit water from rains to penetrate said roof and fall upon the bed of the plaintiff, and that by reason thereof the negligence of the defendant was a direct and proximate cause of the pneumonia that subsequently developed. It is also alleged that the defendant was negligent in permitting the plaintiff to remain in a wet condition for a period of two hours after the discovery that the roof was leaking. The defendant filed a general denial, and on a trial of the case the plaintiff recovered a judgment in the sum of $3,000. A motion for new trial was overruled, and from the judgment overruling said motion the defendant appeals by petition in error to this court. There are five assignments of error, which are as follows:

"First. Said court erred in overruling the motion of the plaintiff in error for a new trial.

"Second. Said court erred because of the abuse of the discretion of the court by the presiding judge, by which the party was prevented from having a fair trial in this: The nurse's chart had been lost, and had not been received until a few moments before counsel went into the trial. Counsel for the defendant had never had any means of examining said chart, and every witness who had been associated with the plaintiff while she was a patient at the hospital was antagonistic to the present owners of the hospital, and not knowing the condition of said chart, and not having an opportunity of talking with the witnesses in reference thereto, counsel for the defendant, in the exercise of his best judgment for the protection of his client's interest, felt that he was not in a position to offer said chart without knowing what the contents thereof were; that Dr. A. M. Houser, a witness who had stated to counsel for defendant that he was greatly offended at the treatment he had received at the hands of Dr. J. Herbert Smith, the physician in charge of said hospital, and that he would leave town before

he would be forced to testify in said case, in his testimony stated he could not tell whether said plaintiff took pneumonia before or after the date on which she claims to have been wet from the leak in the roof of the said hospital, unless he could see the nurse's chart, and, upon being asked, stated that he could not tell whether the plaintiff improved or not after the date she claimed to have been wet, without he could see said chart; and thereupon the court turned to the attorney for the defendant and talked with and at him in the presence of the jury (though he did not call said attorney's name), and stated in substance that the chart was very material in the case, and it ought to be produced for the benefit of the jury, and again, after the case had been closed, the attorney for the defendant asked permission to introduce in evidence a subpoena duces tecum served on him by the attorney for the plaintiff in the case, requiring him to produce on the trial of said cause the said hospital chart. Objection was made by counsel for plaintiff, and counsel for defendant stated that the said subpoena duces tecum was in the possession of his associate counsel the day before, and the fact that it was not offered during the trial was an oversight, because counsel associated in the case had neglected to hand it to counsel who had examined the witness, as he requested him to do so; thereupon the court made the following statement, looking at and talking to the jury, said statement being made in an emphatic tone of voice. to wit: 'Let the record show that the question of the nurse's chart was at various times mentioned in the testimony by the witnesses, and at one time the court suggested that the chart was very material in the case, and notwithstanding the fact that the nurse's chart was in existence, and the fact that the court suggested its materiality, and further fact that it be produced in order that the jury might inspect same, counsel for defendant didn't produce it, and to permit the case to be reopened now for the purpose of introducing the chart, or any evidence with reference to the chart, would, in effect, reopen the whole case, and necessitate going over the ground that was gone over in the testimony yesterday and would unnecessarily delay the trial of this case.' Which statement was excepted to by the defendant. Said statement of the court was clearly prejudicial to the rights of the defendant in the case, because it was, in effect, an order by the court upon counsel for the defendant to produce and exhibit said chart to the jury, taking away from the defendant's counsel the right to offer said chart or not offer the same, as he thought the best interests of his client required. Connected with said statement. the excessive verdict of the jury shows that the minds of the jury were inflamed by the remarks of the court, and the failure of counsel to produce said court induced the jury to return a verdict for the plaintiff for the ex-

cessive damages found, in spite of the evidence in the case that plaintiff took pneumonia prior to the date that she says she was wet by the leak, and in spite of the fact that she was suffering and at the point of death from another and different disease, which had no connection with pneumonia, and in spite of the fact that no witness testified that her long protracted sickness and suffering was caused by the pneumonia; the only evidence on the subject showing that she was improving at the time she claims to have got wet, and continued to improve in spite of it.

"Third. The court erred in not setting aside the verdict of the jury, because the verdict of the jury was contrary to the evidence and without evidence to support it.

"Fourth. The court erred in not setting aside the judgment, because the damages awarded plaintiff were excessive, and appeared to have been given under the influence of passion and prejudice.

"Fifth. The court erred in not setting aside said judgment, because of errors of law occurring at the trial and excepted to by the plaintiff in error."

The foregoing assignments of error are discussed in the brief of plaintiff in error under three propositions, which propositions are as follows:

"(1) The remarks of the trial judge were highly prejudicial, and inflamed the minds of the jury resulting in an excessive verdict being returned. (2) The evidence is insufficient to support the verdict of the jury. (3) Defendant in error has not shown that degree of negligence upon the part of the plaintiff in error, in permitting water to leak through its roof, as will entitle her to recover damages for injuries sustained thereby."

We will now consider the foregoing propositions in the order which they are presented. The first proposition is that the remarks of the trial judge were highly prejudicial, and inflamed the minds of the jury, resulting in an excessive verdict being returned. It appears from the record in this case that, after the evidence had been heard both for the plaintiff and defendant, the following colloquy between counsel for defendant and the court occurred:

"By Mr. Dillard: If your honor please, I forgot to introduce something in here. It was a subpoena duces tecum to produce a hospital chart, and it was an oversight on my part yesterday that I didn't introduce it—

"By the Court (interrupting): There will be no further evidence introduced; the case has been closed by both parties.

"By Counsel for Plaintiff: We object to that offer at this time.

"By Mr. Dillard (continuing): Mr. Dumbell had it yesterday.

"By the Court: The offer to introduce additional evidence is denied.

"By Mr. Dillard: Let the record show that counsel stated to the court that it was an oversight, the fact that it was not offered during the trial, because counsel associated in the case had neglected to hand it to counsel who was examining the witness, as he requested him to do, and note our exception.

"By the Court: Let the record show that the question of the nurse's chart was at various times mentioned in the testimony of the witnesses, and at one time the court suggested that the chart was very material in the case, and notwithstanding the fact that the nurse's chart was in existence, and the fact that the court suggested its materiality, and the further fact that it was produced in order that the jury might inspect the same, counsel for defendant didn't produce it and to permit the case to be reopened now for the purpose of introducing the chart, or any evidence with reference to the chart, would, in effect, reopen the whole case and necessitate going over the ground that was gone over in the testimony yesterday, and would unnecessarily delay the trial of this case.

"By Mr. Dillard: In reply to the suggestion of the court, counsel for the defendant desires the record to show that the chart was in the courtroom; that Dr.—

"By Counsel for Plaintiff (interrupting): Just a minute—

"Mr. Dillard (continuing): That Dr. Smith testified it was in the courtroom—

"By Counsel for Plaintiff (interrupting): We would like to have the jury excused.

"By Mr. Dillard: I am entitled to make this statement after the court has made his statement.

"By the Court: You are not entitled to make any statement of the tender in the presence of the jury. I will excuse the jury, and you may make a statement.

"By Mr. Dillard: No, sir; I want to make a statement in the presence of the jury, because the court made his statement in the presence of the jury.

"By the Court: The court has a right to make a statement in the presence of the jury.

"By Mr. Dillard: We except to the statement of the court.

"By the Court: Any statement that may be warranted will be made in the argument to the jury.

"By Mr. Dillard: We will make it in the argument to the jury.

"By the Court: But the explanation which is made will have to be warranted

by the testimony."

It will be seen from the foregoing record that there is no exception taken by counsel for the defendant to the statement of the court in reference to the nurse's chart, and for that reason no error could be predicated upon the action of the court in making said statement. The exception reserved by counsel for defendant goes to the refusal of the court to permit counsel to make a statement in the presence of the jury.

Notwithstanding the fact that no error could be predicated upon the action of the trial judge in making said statement, yet we have given the matter due consideration, and made an examination of the entire record, to see whether or not it was an abuse of discretion by the trial judge in making said statement. An examination of the record discloses that the clinical record kept by the nurse in charge of plaintiff was secured by counsel for the defendant on the morning that the trial was begun, and remained in the possession of counsel for defendant during the entire trial. We are unable to see under what theory the counsel for defendant was entitled to introduce in evidence a copy of the subpoena duces tecum. Under no view of the case could it be material evidence. The question was not raised by counsel for plaintiff, and it was not offered for the purpose of showing an excuse for counsel in refusing to produce the chart; hence there could be no error in the court's refusing to reopen the case and permit the copy of said subpoena to be introduced. The trial court has a broad discretion in conducting the trial of a cause, and unless it appears that his discretion has been abused the cause will not be reversed on account of his exercising such discretion. The record discloses that, when Dr. Houser was being examined by counsel for the defendant, the following questions were asked the witness:

"Q. I will ask you to state if—as the attending physician of Mrs. Lottie Juby, to state to the jury, in your opinion, what caused the pneumonia from which she suffered. A. I have not formed an opinion about that, and I cannot form an opinion about that unless I see her chart. Q. What do you mean when you state to the jury that this was a case of postoperative pneumonia. A. I mean it was following an operation; post, after; pneumonia developing after an operation; and I am unable to state whether it developed four days after, or three weeks. Without the privilege of examining her chart, I will be unable to make that statement."

At the time that the counsel for defendant was examining Dr. Houser, he had in his possession the chart in question, and refused to give said witness the benefit of the same. There is no contention by counsel for defendant that the chart or clinical record had been improperly kept, or that it did not speak the truth. It appears that said clinical record consisted of about 25 pages of written matter, and that it was kept by one Miss Audrey Brown. Counsel for defendant did not request the court to permit him time to make an examination of this record, and his only excuse for not offering the same in evidence is that he had not had time to make an investigation of what it contained, and that to offer it in evidence without making such examination might have disclosed something that would have been prejudicial to the interest of the hospital. We are not impressed with the force of counsel's argument and the excuse that he offers for his conduct in this matter. If he desired time to make an examination of said chart, he should have requested the indulgence of the court for a sufficient length of time to have made such examination.

While counsel for defendant urges that all of the witnesses that were connected with the hospital at the time that Mrs. Juby was an inmate were at the date of this trial antagonistic to the interest of said hospital, this contention is not borne out by the evidence of said witnesses. Miss Audrey Brown, the special nurse who made said clinical record, and Miss Harriett Zigler, who was in charge of the hospital, both appeared in the trial of this cause and gave their testimony. Each one of said witnesses testified that the plaintiff in this action continued to improve after the leaking of the roof and the wetting of the bed on which she was lying, and that she did not suffer any bad effects from said wetting, but that, on the contrary, her condition was improved. We cannot conclude, from the foregoing testimony of these two witnesses, who were in charge of plaintiff during her sickness, that their feelings were antagonistic to the defendant in this case. On the contrary, their evidence was in direct conflict to that of the plaintiff on every point, except to the fact that the roof did leak and that a portion of the bed on which the plaintiff was lying was wet. It certainly cannot be said from a review of their evidence that they were unduly friendly towards the plaintiff. It was not incumbent on counsel for the defendant to introduce this clinical record, unless he should so desire; but he cannot be permitted to withhold this evidence, and, after the trial is closed, then predicate error upon the ground that the trial judge, in the exercise of his discretion, refused

to reopen the cause and permit further evidence to be taken. In the case of Love v. Reynolds, reported in 36 Okla. 297, 128 Pac. 242, the following rule is announced:

"Remarks of the court during the trial of a cause will not constitute reversible error, unless it be made to appear that complainant's rights were prejudiced thereby."

To the same effect is the rule laid down in the case of Kepley v. Dingman, 36 Okla. 771, 130 Pac. 284.

The second proposition urged by counsel is that the evidence is insufficient to support the verdict of the jury. The evidence upon the part of the plaintiff discloses that she went to the hospital on or about the 15th day of February, 1915, and immediately after the operation she was placed in the room in question, and that on or about the 20th or 21st day of February there was a heavy rain, and that the roof leaked and wet the bed on which she was lying, and that she was thereby chilled. On the morning following she became worse, and that a short time thereafter pneumonia developed, and that by reason thereof she was confined in said hospital for a longer period of time than she otherwise would have been. There is no dispute but that said roof did in fact leak, and that the bed on which Mrs. Juby was lying was wet to a considerable extent. It is further disclosed on the part of the defendant that some time in January prior to the date on which Mrs. Juby went to said hospital, said roof was in a leaking condition, and that the said walls had become damp; that this matter was brought to the attention of the officials of the hospital, and a carpenter was secured and the roof repaired. It further appears from the evidence on the part of the defendant that the roof leaked when the rain came from the east prior to the time it was repaired. The plaintiff in this case testified that, sometime prior to the night on which the roof leaked upon her bed, the roof leaked upon the chart or clinical record kept by the nurse, to the extent that the writing thereon could not be read, and that a new clinical record was prepared by said nurse. There was a direct conflict in the evidence, which was a matter to be left to the jury. The theory of the defendant was that the pneumonia was caused from the effects resulting from the administration of ether to the plaintiff during the operation, and that the fact that the roof leaked and the bed became wet was not the cause of the plaintiff developing pneumonia. The jury saw fit to adopt the theory of the plaintiff in this case, and it cannot be said there is no evidence tending to support the verdict of the jury. The evidence of the medical experts, both for the plaintiff and the defendant, testified that pneumonia might be superinduced by exposure. This being purely a question of fact to be submitted to the jury, it will not be disturbed on appeal, where the verdict and judgment is supported by any evidence that reasonably tends to substantiate said verdict and judgment. Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 129 Pac. 858; Loeb v. Loeb, 24 Okla. 384, 103 Pac. 570.

As to the third proposition, it is contended that there is not shown that degree of negligence upon the part of the plaintiff in error in permitting water to leak through its roof as will entitle the defendant in error to recover damages for injury sustained thereby. With this contention we are unable to agree. The rule is well settled that, when a hospital is being conducted for private gain, it is bound to exercise that degree of care towards its patients, measured by the capacity of such persons to look after and provide for their own safety, as an ordinarily prudent person would exercise under like circumstances and conditions. The rule laid down in the case of Hogan v. Clarksburg Hospital Co., 63 W. Va. 84, 59 S. E. 943, is as follows:

"There can be no question about the liability of a hospital, which is being conducted for private gain, and not for charitable purposes, for damages to its patients through the negligence or misconduct of its officers and employes. It is bound to exercise that degree of care toward its patients, measured by the capacity of such patients to look after and provide for their own safety. It is the duty of such hospital to employ only competent physicians and nurses, and to treat such patients with such skill and care as ordinarily obtains in the conduct of such institutions, and to protect its patients in such manner as their condition may render necessary, and such degree of care and diligence should be in proportion to the physical or mental ailments of the patient rendering him unable to look after his own safety."

In the case of Durfee v. Door, 123 Ark. 542, 186 S. W. 62, the rule with reference to private hospitals is announced as follows:

"The principle of law which controls is one which has been applied to many situations. The keeper of the hospital is liable for damages, if he fails to perform some duty which he owes his patient, and the patient is injured as a result of this failure. The extent and character of this duty depends on the circumstances of each particular case."

In the case of Wetzel v. Omaha Mater-

nity & General Hospital Association, 96 Neb. 636, 148 N. W. 582. Ann. Cas. 1915B, 1224, the following rule is announced:

"The defendant was incorporated to conduct a hospital for private gain, and as such it is liable in damages to patients for the negligence of its nurses and other employes. * * * A patient is generally admitted to a hospital, conducted for private gain, under an implied obligation that he shall receive such reasonable care and attention for his safety as his mental and physical condition, if known, require. * * *Any other rule would be a reproach to the law and to hospital management. * * * A nurse's absence for five minutes may amount to negligence. * * * Under the circumstances of this case, as already outlined the question of negligence was an issue of fact for the jury."

We might cite numerous other cases to the same effect; but it is unnecessary, for there seems to be no conflict in the authorities on this question. The plaintiff in this case was received in the hospital of the defendant with an implied understandng and agreement that she would be furnished with a suitable room for a person in her condition. It was incumbent on the defendant to exercise ordinary care in furnishing the plaintiff a suitable and safe place, and to use ordinary care in furnishing the plaintiff a competent nurse, and to use ordinary care in looking after and caring for the plaintiff while she was in its care and custody. These questions present an issue of fact which was rightly submitted to the jury for determination. The verdict of the jury was that these requirements had not been met by the defendant.

From a careful reading of this record we are convinced that, if the verdict had been based solely on the negligence of the defendant in permitting the plaintiff to remain in her bed for a period of two hours after ascertaining that the roof was leaking and the bed was wet, a verdict on that issue alone would be warranted by the evidence. It appears from the record in this case that when the plaintiff was placed in the care and custody of the defendant, and was paying the ordinary prices charged by such institution, the defendant did not place a skilled and trained nurse over the plaintiff, but, on the contrary, placed a pupil nurse in said institution, whose training did not cover more than a period of six months, in charge of her, and if the evidence of plaintiff is to be believed this pupil nurse permitted her to lie on this wet bed for a period of more than two hours before any effort was made to change her clothes or the sheets on said bed. If this state of facts

be true, this conduct alone would constitute such negligence that a cause of action might be predicated thereon, and a judgment recovered.

We are therefore of the opinion that this judgment should be affirmed.

By the Court: It is so ordered.