DR. MIGUEL ROSES ARTÁU ET AL., Plaintiffs and Appellees-Appellants, v. DR. MARIO JULIÁ GARCÍA, Defendant and Appellant-Appellee.

No. 9397.—Argued December 5, 1946.—Decided June 27, 1947.

486

*Mariano Acosta Velarde* and *Daniel Pellón Lafuente* for defendant and appellant-appellee. *Félix Ochoteco* and *L. E. Dubón* for plaintiffs and appellees-appellants.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

The original complaint in this case was filed on June 17, 1939. In the amended complaint filed on May 27, 1941, it was alleged "that the plaintiffs Miguel and Elvira Roses Denton were on the dates mentioned below, and are now of age and legitimate children of the other plaintiff herein Miguel Roses Artáu and of his legitimate wife María Adela (Minnie) Denton, who were married until the death of the latter on the date and as alleged further on in this complaint; and that all said plaintiffs are joined as such in the present action because of the common interest they have

therein and in the subject matter thereof." The plaintiffs alleged that Mrs. Roses since about a year preceding her death was mentally deranged, suffering from involutional psychosis, with a special tendency to suicide, of which fact the defendant had knowledge; that by reason of her illness and especially of the tendency of the patient to commit suicide, the plaintiffs decided to confine and hospitalize her in the "Dr. Juliá's Clinic," owned by the defendant, which they did, in order that there she be watched, taken care of, and treated in her illness, and the plaintiffs paid to the defendant the agreed compensation for said hospitalization and his professional services; that on June 19, 1938, Minnie Denton died, while confined in defendant's clinic, her death being due to the fact that the defendant and the personnel that works for him under his direction, charged with the care and attendance of said patient, negligently gave occasion for her to escape from her room, climb to the terrace of the building, and from there jump to and fall on the grounds or sidewalk which surrounds it, suffering bruises and wounds so serious as to cause her death on that same date; that as a consequence of the negligence of the defendant the plaintiffs were forever deprived of the companionship or society of the deceased Minnie Denton, have suffered intense anguish, and mental and moral sufferings, have paid for all the burial expenses, and have sustained other damages. For all of which they claimed the sum of $100,000 as damages, costs, and attorney's fees.

The defendant answered specifically denying the essential averments of the complaint. He alleged, as new matter, the contributory negligence of Mrs. Roses as the proximate and immediate cause of her death; that the defendant employed all the diligence of a good father of a family in order to prevent the death of said lady, her death being the result of an unfortunate and unavoidable act, without there being any guilt or negligence on the part of the defendant.

After the case had been submitted, Dr. Miguel Roses Artáu died and he was substituted by his children, coplaintiffs herein.

The lower court rendered judgment for the plaintiffs and adjudged the defendant to pay the sum of eight thousand dollars ($8,000), plus costs and $500 as attorney's fees.

The appeal of the defendant-appellant is based on six assignments of error, which we will discuss in the same order in which they were stated.

■■ The appellant urges that the lower court erred in permitting the plaintiffs at the trial, over the objection of the defendant, to amend the complaint, changing the cause of action; and also in rendering judgment against the defendant and in favor of the plaintiff heirs, since the action had prescribed, pursuant to §§ 1803 and 1868 of the Civil Code, 1930 ed.

The incident which has given rise to this assignment occurred when, after the examination of the first three witnesses, the attorney for the plaintiffs offered in evidence a declaration of heirship respecting the estate of Mrs. Roses. The defendant objected, on the ground that the evidence offered was immaterial and irrelevant, since there was no allegation in the complaint which would justify its admission. The plaintiffs requested permission to amend the complaint in the sense that the plaintiffs were the sole and universal heirs of the deceased. The defendant objected on the ground that, as more than one year had elapsed since the aggrieved parties knew of the damages caused, the action was barred; and, furthermore, because the proposed allegation was a wholly new cause of action, distinct from that alleged in the original complaint, which was not based on plaintiffs' status as heirs. The plaintiffs argued that it was not their purpose to bring new parties to the suit and that the only thing they sought was to establish the fact that the same persons who instituted the action were the sole

heirs of the decedent. The lower court allowed the amendment, since it considered that no change of cause of action was involved; that the action brought was the one established by § 61 of the Code of Civil Procedure in favor of the heirs or legal representatives of a person of legal age whose death has been caused by the negligence of another; and that the only purpose of the amendment was to conform the pleadings to the jurisprudence which requires that it should be stated as a conclusion that plaintiffs are the sole heirs of their predecessor in interest. The court offered the defendant a continuance of the case to give him time to answer the amendment. The defendant waived that right and amended his answer to add the special defense of prescription, since more than one year had elapsed from the time of Mrs. Denton's death to the date on which the plaintiffs, as her heirs, made their claim.

In our judgment, the lower court did not err in permitting the complaint to be amended as to allege that the persons who brought the action, as husband and children of the deceased, had been declared her sole and universal heirs.

The estate of the deceased belonged to the plaintiffs Miguel and Elvira Roses Denton, as her legitimate children, and to Dr. Miguel Roses Artáu, as her husband. It was so recognized by the District Court of San Juan in declaring them, by an order rendered on July 28, 1938, sole and universal heirs of María Adela Denton de Roses. The plaintiffs, from the moment their predecessor in interest died, had the status of universal heirs of the deceased and, as such, were entitled to bring the action which § 61 of the Code of Civil Procedure grants to the heirs to claim damages when the death of their predecessor is caused by the illegal or negligent act of another person or its employees. The allegation made in the amended complaint, "that the plaintiffs Miguel and Elvira Roses Denton are, . . . of age and legitimate children of the other plaintiff herein Miguel Roses

Artáu and of his legitimate wife María Adela (Minnie) Denton, who were married until the death of the latter . . . ; and that all said plaintiffs are joined as such in the present action because of the common interest they have therein and in the subject matter thereof,'' was, in our judgment, sufficient to inform the defendant that the plaintiffs based their claim on their status as heirs of the deceased.

When the trial was held, on June 22, 1944, the Rules of Civil Procedure for the Courts of Puerto Rico, had already become effective, since September 1, 1943. And those rules are applicable to all further proceedings in actions which were pending on that date (Rule 86). Rule 15, which refers to amended and supplemental pleadings, provides in its subdivision (a) that a party may amend his pleadings by leave of the court and that "leave shall be freely given when justice so requires.'' The same Rule 15, in its subdivision (b), provides the following:

''. . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.''

In *Sánchez* v. *Cooperativa Azucarera,* 66 P.R.R. 330, 333–34, in amending the complaint a different cause of action was alleged from that set up in the original complaint. In the latter a cause of action based on a contract of compromise was relied on; and in the amended complaint an action for damages due to negligence was set up. There as here, it was alleged by the defendant that the action set up in the amended complaint had prescribed since more than one year had elapsed since the date of the fire which caused the damages claimed. In deciding that the action was not barred, we said:

". . . Pursuant to the provisions of the Code of Civil Procedure, the effect of the amended complaint under the circumstances of the present case, was not retroactive to the date of the original complaint. But under the Rules of Civil Procedure in force when this action was commenced the law is different. To this effect Rule 15'(c) provides:

"'*Retroactive Effect of Amendments:* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.'

"According to the rule copied above, the test to determine whether an amended pleading is retroactive to the date of the original pleading is not whether the amended pleading sets up a cause of action different from the one alleged in the original pleading. The real test is whether the amended pleading grows out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, it making no difference whether the claim set up in the amended pleading is sought under a theory of law different from the one under which the claim was made in the original complaint. Moore Fed. Pr., Vol. 1, § 15.08, page 810; Commentary, Relation Back of Amendments to Pleadings After Statute of Limitations Has Run, 2 Fed. Rules Serv. 15c.1.

"In the present case it appears from the original as well as the amended complaint that the conduct, occurrence or transaction relied on for the actions alleged in both complaints, was the fire in the cane plantation belonging to the defendant, caused by a spark which escaped from the chimney of defendant's locomotive. Under these circumstances the effect of the amended complaint is retroactive to the date of the original complaint, and since the latter was filed within the year of prescription, we feel bound to conclude that the action was not barred at the time the amended complaint was filed."

In the case at bar, the occurrence or transaction which served as a basis for the amended complaint of May 27, 1941, and for the amended complaint at the trial is the same—the death of the wife and mother, respectively, of the plaintiffs, caused by the alleged negligence of the defendant. The plaintiffs are the same. The lower court did not err in permit-

ting the complaint to be amended. Pursuant to Rule 15(c), the amendment should have retroactive effect to the date of the filing of the original complaint. And since the latter was filed within the year following the date of the accident, the lower court did not err in holding that the action was not barred.

██ In the second assignment it is urged that the lower court erred in rendering judgment for the plaintiffs "whereas from the pleadings and the evidence it appears that the cause of action relied on arose from a contract, and an action for damages for the death of a person is not within the scope of a breach of contract."

The defendant-appellant has cited numerous decisions of the various American states in which the difference between obligations and causes of action which grow out of contracts and those which arise from acts or omissions in which there is fault or negligence. We will not go into a detailed examination of the decisions cited, since the difference established by the general law between actions *ex contractu* and *ex delicto* is well-known.

The Rules of Civil Procedure which took effect on September 1, 1943, and which, we repeat, are applicable to "all further proceedings in actions then pending," have changed the whole procedure, rendering the decisions cited by the defendant-appellant inapposite. Rule 81(b) provides:

"*Errors in the Title or Prayer for Relief.*—Any error in the title of the action brought or in the prayer for relief shall not preclude the court from disregarding the error thus committed and granting the appropriate remedy in accordance with the pleadings and the proof."

The action brought in this case was entitled a civil action for damages. The allegations of the complaint show that the damages claimed are those suffered by the plaintiffs as a consequence of the death of Mrs. Roses, caused by the negligence of the defendant. It is true that in the complaint it

is alleged that the plaintiffs paid to the defendant for the hospitalization and care of the patient. But that allegation evidently made with the only purpose of establishing the fact that the patient was legally confined in defendant's clinic, does not change the action brought into one *ex contractu,* nor preclude the court from granting the appropriate remedy in accordance with the pleadings and the evidence.

In the case of *Carrasquillo v. American Missionary Association,* 61 P.R.R. 837, damages were claimed for the burns suffered by a child on the day of its birth, caused by the negligence and unskillfulness of a nurse employed in defendant's hospital. It was alleged as a defense that the defendant association had never had as its object or purpose profits or earnings; that the hospital was maintained for charitable purposes and that a great number of insolvent patients received free medical attention therein; that persons of means paid a sum which was fixed proportionate to their financial conditions; and that the income that the hospital received on that account scarcely covered 50 per cent of its expenses. The evidence showed that the mother of the child entered the hospital after having agreed to pay the sum of $40, which was paid two days after her hospitalization. It was held that a hospital which customarily dedicates itself to the hospitalization and medical treatment of patients, and which renders those services to any patient who will pay the agreed price and which contracts for the rendering or services upon payment, is and should be considered as a commercial enterprise or establishment for the purpose of the provisions of § 1803 of the Civil Code—even though it also renders free services to insolvent persons—and as such, it is liable for the damages caused to said patients by the negligence of its employees in the exercise of their duties.

As we said in the *Carrasquillo* case, *supra:* "The general rule of law is that a person is liable for all the damages he may cause to another through his negligence or tortious

conduct. Immunity is the exception." See *President and Directors of Georgetown College* v. *Hughes,* 130 F.(2d) 810; *Nicholson* v. *Good Samaritan Hospital,* 133 A.L.R. 809; *Hayhurst* v. *Boyd Hospital,* 43 Idaho 661, 254 P. 528; *Tulsa Hospital Ass'n.* v. *Juby,* 63 Okla. 243, 175 P. 519.

Defendant's clinic is an establishment dedicated to the hospitalization and treatment of persons suffering from nervous and mental diseases, which are admitted therein upon payment of the agreed price for services rendered. Mrs. Roses entered said institution on those terms. The case, therefore, falls within the doctrine laid down by this Court in the case of *Carrasquillo* v. *American Missionary Association, supra.* The authorities we have examined[1] establish the rule that when a hospital dedicates itself to the care of patients, for pecuniary purposes, its owner is liable for any damages caused to its patients as a consequence of the negligence of its employees.

██ The third and fourth assignments of error refer to the weighing of the evidence. The appellant urges that the lower court erred in holding that Dr. Roses Artáu, in stating the case of his wife to Dr. Jiménez, Director of defendant's clinic, informed him that "the nervous phenomena which he had observed in her made him consider her as a potential suicide." There was no error. From the record of the case it appears (Tr. of Ev., p. 135), that Dr. Roses testified as follows:

"Attorney: You stated that to Dr. Jiménez, you say, or are those things . . .

"Witness: No, I do not know the precise words I used. I told him that I understood that within the phenomena which surrounded the sick person, I considered her a potential suicide."

The appellant urges that the holding that the death of the patient was due to the negligence of the defendant is

---

[1] *Broz* v. *Omaha Maternity and General Hospital Ass'n,* 96 Neb. 648, 148 N.W. 575; *University of Louisville* v. *Hammock,* 127 Ky. 564, 14 L.R.A. (N.S.) 784.

against the weight of the evidence. We have carefully examined the evidence adduced by both parties. It is true that there is some conflict. But since the evidence for the plaintiffs believed by the trial court, was sufficient to show that the death of Mrs. Roses would not have occurred if defendant's employees had exercised due care and diligence in order to protect the patient, it is our duty to respect the findings of the lower court.

■ The defendant-appellant contends that the sum of $8,000 granted as compensation is excessive and against the weight of the evidence and that the lower court erred in adjudging the defendant to pay the sum of $500 as attorney's fees.

The lower court did not grant any compensation either for the alleged burial expenses or for the mental and moral anguish and sufferings claimed, since it considered that these were not proved. The compensation was granted solely for the loss of the society and companionship of the deceased, the lower court saying:

". . . The plaintiffs have suffered a pecuniary loss, since they were deprived of the companionship and society of their predecessor in interest occasioned by her death, due to the negligence of the defendant and his employees, and this means for Dr. Roses the destruction of his home with all the consequence which this occurrence carries with it and for him and his children the loss of the attention, care, and help which they received from their wife and mother, respectively.

"* * * * * * *

"In fixing the amount of the award, we must bear in mind, for the purpose of mitigating the damages suffered, the age of the plaintiffs, especially that of Dr. Roses Artáu, and of their predecessor, the illness she suffered, her life expectancy due to her illness, and the intense treatment to which she had to be submitted in order to obtain her possible recovery."

That compensation for the loss of the society and companionship of the deceased, as well as for the mental and

moral anguish and suffering of her husband and children, lies is a rule firmly established in this jurisdiction. *Maldonado* v. *Porto Rico Drug Co.*, 31 P.R.R. 709; *Orta* v. *Porto Rico Railway, Light & Power Co.*, 36 P.R.R. 668; *Hance* v. *Méndez*, 52 P.R.R. 324; *Sánchez* v. *Sucesión J. Serrallés*, 53 P.R.R. 77; *Castro* v. *González*, 58 P.R.R. 369; *Carrasquillo* v. *American Missionary Association, supra.*

■■ We do not deem it necessary to interfere with the discretion of the lower court in granting to the plaintiffs the sum of $500 as attorney's fees. The defendant emphatically denied his liability for the death of Mrs. Roses, and in such circumstances he placed himself in an obstinate position. *Font* v. *Viking Construction Corporation*, 58 P.R.R. 691, 714; *Reyes* v. *Aponte*, 60 P.R.R. 867, 877.

The judgment appealed from should be affirmed.

Mr. Justice Snyder and Mr. Justice Marrero did not participate herein.