651 P.2d 672 (1982)
Pamela ROGERS, Guardian of Doris W. Rahill, an incompetent person, Appellant,
v.
The BAPTIST GENERAL CONVENTION OF the STATE OF OKLAHOMA, d/b/a Baptist Medical Center, and Harold Paul Hood, Appellees.
No. 53773.
Supreme Court of Oklahoma.
May 25, 1982.
Rehearing Denied October 13, 1982.
Claude S. Woody, Jr., Oklahoma City, for appellant.
Foliart, Mills & Niemeyer, Oklahoma City, for the appellees.
*674 BARNES, Vice Chief Justice:
This action was filed in an attempt to recover damages suffered by Doris Rahill on April 13, 1975. The injuries resulted from a pedestrian-automobile collision involving Mrs. Rahill and Harold Hood.
The operative facts require some detail. Mrs. Rahill has had a history of mental illness in the form of anxiety, fear, paranoia and depression. She had received treatment for these symptoms for several years. In fact, some of the treatment had occurred in Baptist Hospital. The significance of her problems was indicated by a medical determination that she was unable to work and support herself.
On April 10, 1975 Mrs. Rahill was admitted to Baptist Hospital for treatment of a heart problem. At approximately 11:00 p.m. on the evening of April 13, Mrs. Rahill, while still a patient, left her room and proceeded to leave the hospital. At 12:41 a.m. of the next day, Mrs. Rahill attempted to cross the Northwest Highway. At this point, the car driven by Mr. Hood struck her.
Mrs. Rahill suffered multiple fractures. The extent of the injuries required almost eight (8) months of hospitalization and an additional year of confinement in a wheelchair.
Baptist Hospital was joined with Hood in the suit on the alleged grounds that it had breached its duty of care. The specifics of this claim revolve around the idea that the hospital staff should have coordinated the records of her past treatment in order to provide the level of care required by an incompetent individual.
Trial was held in District Court. The jury rendered a verdict which found the plaintiff 67% negligent, the hospital 33% negligent and the driver of the car 0% negligent.
Plaintiff's first proposition of error is that the trial court incorrectly excluded the testimony of an expert witness. The witness in question was Mary Waterstaat. Waterstaat was qualified as an expert in the field of Medical Record Science. This field deals with the preparation, administration and utilization of health records for proper patient care.
Plaintiff desired to use Waterstaat's testimony to prove that the failure of Baptist Hospital to cross-reference Mrs. Rahill's previous treatment with her current record was negligent. The basis of this conclusion was to be based on standards developed by the Joint Committee on Accreditation of Hospitals. The expert also was to be used to testify that in a general sense proper record keeping and use of those records enhances the quality of care given. The specific impact of this testimony would be to demonstrate that the hospital was negligent by not acquiring data relating to Mrs. Rahill's previous treatment. The assumption of this testimony was that the failure to properly utilize the available records contributed to alleged failure of the hospital staff to adequately care for Mrs. Rahill.
The difficulty in evaluating this argument is that parts of the desired testimony were allowed. Evaluation requires sorting out the bits and pieces of testimony that were allowed and then determining if the excluded parts constitute reversible error.
The transcript reveals that Waterstaat was allowed to testify to the existence of the standards. Testimony was also given that indicated that the hospital failed to meet some of these standards.[1] Plaintiff *675 contends that Waterstaat should have been allowed to testify that the information contained in prior medical records was vital to the care of Mrs. Rahill. This contention was made by plaintiff's counsel in an offer of proof to the court after Waterstaat had completed her testimony and departed from the courtroom. Defendant Baptist Hospital objected to the offer of proof as being outside the scope of excluded testimony and the trial court sustained defendant Baptist Hospital's objection. A review of the record reveals that Waterstaat was never asked the question of whether the hospital records were vital to the care of Mrs. Rahill. Such testimony was never excluded by the trial court. Therefore, the offer of proof concerning this issue was outside the record and does not provide a proper basis for appeal. No error can be claimed based upon plaintiff's counsel's own failure to ask the questions necessary to illicit the desired testimony concerning this issue.
An examination of the record reveals that the vast majority of the information that plaintiff wished to put before the jury was actually placed there. While it is true that plaintiff may not have been permitted to offer the data in the way that she wished, there is no denial that the jury heard ample testimony to allow it to support plaintiff's theory. In fact, the jury did determine that the hospital was negligent.
Plaintiff's second argument is that the defendants' evidence concerning plaintiff's mental competency did not support the submission of contributory negligence as an issue to the jury.
Plaintiff's argument is based on a restatement of the various pieces of evidence offered regarding her psychiatric problems. An examination of the record, however, reveals that the defendant offered equally acceptable evidence to indicate that Mrs. Rahill was not suffering disturbance sufficient to render her helpless or was not incapable of exercising reasonable care of her own safety.
This conflict of testimony and evidence is the framework for a jury issue. We find that the district judge was correct in sending this issue to the jury.[2]
Plaintiff's next argument claims that the jury instructions were prejudicial and misleading. Specifically, plaintiff contends that Instruction No. 19,[3] failed to instruct the jury that there must be a preliminary finding that Mrs. Rahill was capable of exercising the care of a reasonable person before she could be charged with contributory negligence. This contention suffers from a failure to look at the entire set of instructions. While it is true that the instruction concerning due care did not include the preliminary finding of competence, this omission is not fatal because a later instruction, Instruction No. 22, placed the issue before the jury.
Plaintiff also objected to the use of the phrase in Instruction No. 22, "insane or devoid of intelligence" as representing the standard to be used by the jury in assessing the plaintiff's capacity. Plaintiff suggests that a more appropriate standard would be whether the person possessed the mental capacity to use the care of her own safety and protection that a normal person should exercise. We do not find this instruction reversible because the concept of "devoid of intelligence" was explained as one that revolves around the anticipated response to ordinary dangers.
*676 Taken as a whole the instructions present the issues in an acceptable form. Although several instructions standing alone may be subject to criticism, when the instructions taken together fairly submit the issues to the jury, the judgment entered on the verdict will not be disturbed.[4]
Lastly, the plaintiff claims that the verdict finding plaintiff 67% negligent and defendant hospital 33% negligent is evidence that the instructions were misleading and the jury was confused. Plaintiff's theory is that in order to find defendant hospital negligent at all, the jury had to find that Mrs. Rahill was mentally incapacitated when she left the hospital. This theory ignores the Oklahoma law that a hospital's duty toward its patient must be commensurate with the patient's physical and mental condition.[5] This hospital duty of care was presented to the jury in Instruction No. 7 and No. 8.[6] Plaintiff apparently takes the position that a hospital only has two standards of care, one for competent patients and another, higher standard, for incompetent patients. Contrary to this contention, our case law provides that hospitals must take into account the physical and mental condition of patients on an individual basis.[7] This individualization establishes the possibility of a multitude of standards which are applied and particularized to each case. In this case, because there was some evidence presented concerning plaintiff's depression and tension, the jury found that the hospital had a higher level of duty than if the plaintiff suffered no symptoms and that the hospital failed in its duty to provide such higher level of care resulting in the jury verdict of 33% negligence on the part of the hospital. Concurrently, the jury found that Mrs. Rahill, although depressed and anxious, was capable of apprehending ordinary dangers and acting accordingly and so was contributorily negligent in causing her own injuries to the extent of 67%. We find that said verdict, being consistent with the evidence and the instructions in this case, does not demonstrate any confusion on the part of the jury.
AFFIRMED.
IRWIN, C.J., and HODGES, SIMMS and OPALA, JJ., concurring.
LAVENDER, DOOLIN and WILSON, JJ., dissenting.
HARGRAVE, J., disqualified.
NOTES
[1] Plaintiff argues that the trial court excluded Waterstaat's testimony regarding the custom and duty of hospitals throughout the country to retrieve the medical records from prior hospitalizations. Plaintiff contends the court erroneously excluded such testimony by applying the locality rule, which rule, plaintiff argues, is inapplicable to hospitals. We agree that the locality rule, i.e., the requirement that a medical practitioner be judged by the standards of practice ordinarily employed by similar practitioners in the same or similar communities, is inapplicable to hospitals because hospitals are held to a standard of ordinary care commensurate with the patient's physical and mental condition. Tulsa Hospital Association v. Juby, 73 Okl. 243, 175 P. 519 (1918). Such standard of care does not vary from community to community. However, a careful review of the court's rulings as reflected in the record clearly demonstrates that there was no ruling by the court excluding any of Waterstaat's testimony on the basis of the locality rule. Obviously there can be no appeal from a ruling which was never made.
[2] While it is true the Constitution (Art. 23, Sec. 6) requires the submission of contributory negligence, this requirement does not apply if there is no evidence to support that proposition. See Warner v. Kiowa County Hospital, 551 P.2d 1179 (Okl.App. 1976), Fuller v. Neundorf, 278 P.2d 836 (Okl. 1954).
[3] "No. 19. You are instructed that it was the duty of the plaintiff to use ordinary care for her own safety and to use her ordinary powers of observation and her faculties to avoid injury to herself."
[4] Loftis v. LaSalle, 434 P.2d 221 (Okl. 1967); Stills v. Mayer, 438 P.2d 477 (Okl. 1968).
[5] Tulsa Hospital Association v. Juby, 73 Okl. 243, 175 P. 519 (1918).
[6] "No. 7. You are instructed that a hospital, in the care of its patients, must exercise such care and caution for their safety as the patient's mental and physical condition, as known or should be known to the hospital authorities and employees, may require. It is bound to exercise that degree of care toward its patients, measured by the capacity of such patients to look after and provide for their own safety. It is the duty of the hospital to employ only competent personnel, and to treat its patients with great skill and care as ordinarily obtains in the conduct of such institutions, and to protect its patients in such manner as their condition may render necessary and such degree of care should be in proportion to the physical or mental ailments rendering him unable to look after his own safety."

"No. 8. You are instructed that it was the duty of defendant, Baptist Medical Center, to provide for the care and protection of its patients, and in the exercise of this duty the hospital was required to provide such reasonable care as the patient's known condition required.
You are further instructed that defendant, Baptist Medical Center's responsibility to its patients extended to the taking of such measures as were necessary to prevent the patient from hurting herself if the hospital knew or, in the exercise of reasonable care, should have known, that the patient's mental incapacity might lead to her own injury."
[7] Tulsa Hospital Association v. Juby, supra.