### FLOWER HOSPITAL v. HART.

No. 24020. June 30, 1936.

Rehearing Denied Dec. 8, 1936.

Application for Leave to File Second Petition for Rehearing Denied Dec. 22, 1936.

Sam A. Neely, D. F. McMahon, and D. F. Rainey, for plaintiff in error.

Ford & Montgomery (Leslie W. Lisle, of counsel), for defendant in error.

PER CURIAM. The plaintiff, Hart, seeks recovery for an injury received at defendant, Flower Hospital. Plaintiff was a paid in full inmate. One of the nurses, in the presence of two others who were furnished by the hospital, laid a light globe on the forearm and breast of the plaintiff while she was unconscious shortly after an operation and on the verge of death from heart failure, and while the only doctor present, Dr. Summers, was occupied in preparing or giving an emergency injection. Dr. Summers is not shown to be the employee of either party at the time.

The controversy is over the location of the liability, not over the facts. The sole defendant, the hospital, contended that Doctors Miller and Summers were chargeable as temporary overmasters of its servants. The evidence shows that Dr. Miller was engaged to, and did, perform the operation, during which patient's collapse occurred; that he directed plaintiff be removed to her room and given a saline injection; he immediately left; is not thereafter shown connected with the case. The evidence shows Dr. Summers as being a medical doctor who had declined the operation. He was present at time of the burn, but employment by plaintiff, or by the hospital, at the hospital is not shown. The nurses were the regular paid employees of the hospital, and the equipment was the hospital's.

The plaintiff was, by the nurses, removed from the operating room to her room and given a saline injection; preparations therefor were made by the nurses, which is proven customary, and that they know how. It is shown that Dr. Summers gave the injection, with which no fault is shown. During the preparation for giving of the injection, or while it was being given, which is not clear, without proven directions therefor, one of the servants of the hospital placed an unshielded light globe on the naked flesh of the plaintiff between arm and breast and covered it with a towel. There were then two nurses present. The globe remained until a nurse noticed the burning and jerked the globe from the plaintiff's body. A serious injury had then occurred. That such burning shows lack of ordinary care is unquestionable. That such person as committed such act is unqualified is unquestionable. To whom to charge the liability under these peculiar facts is a matter of much difficulty.

That the operating surgeon during the operation, or the doctor in his service, when employed by patient, must be and is master and responsible for the acts of the attendants and nurses, although employees of the hospital, is declared in Aderhold v. Bishop, 94 Okla. 203, 221 P. 752, and others. The rule of responsibility of the surgeon where the operating surgeon accompanies and attends the patient and directs after the operation is the same. Davis v. Potter (Idaho) 2 P. (2d) 318, and Harber v. Gledhill (Utah) 208 P. 1111. The rule of obligation and responsibility of the employed hospital to the patient, after the operation, and when not under direction and control of patient's employed doctor or surgeon, is declared in Tulsa Hospital Ass'n v. Juby, 73 Okla. 243, 175 P. 519, as:

"A hospital that is conducted for private gain receives patients under an implied obligation that it will exercise ordinary care and attention for their safety, and such degree of care and attention should be in proportion to the physical and mental ailments of the patient, and the question whether or not such requirements have been met presents an issue of fact to be determined by the jury."

A surgical operation is defined in Akridge v. Noble, 114 Ga. 949, 41 S. E. 78:

"Begins when the opening is made into the body and ends when this opening has been closed in a proper way after all ap-

pliances necessary to the successful operation have been removed from the body."

To this might well be added, "and after patient has been duly cared for according to condition, and in interest of safety."

The hospital owed this duty, as defined above, to plaintiff. The jury, so instructed, found that defendant did not perform its duty; such finding was made on all the evidence before us. The finding of the jury is conclusive on us.

The defendant's plea is that it owed no duty to plaintiff because she had employed a surgeon to perform the operation, and such surgeon was the overmaster of defendant's servants, temporarily loaned to him for the operation. That rule is well established, as applicable during the operation (Aderhold v. Bishop, 94 Okla. 203, 221 P. 752), and we do not vary it. The operation is defined above. The record shows that the surgeon, Miller, passed out at the completion of the operation. The hospital's duty then arose, under its contract with plaintiff as defined above (Tulsa Hospital Ass'n v. Juby, 73 Okla. 243, 175 P. 519). Therein is quoted from Hogan v. Clarksburg Hospital Co., 63 W. Va. 84, 59 S. E. 943:

"To employ only competent physicians and nurses, and to treat such patients with such skill and care as ordinarily obtains in the conduct of such institutions, and to protect its patients in such manner as their condition may render necessary * * * be in proportion to the physical and mental ailments of the patient rendering him unable to look after his own safety."

This rule of duty was fairly presented in the court's instruction, but more mildly than we interpret the above language—of which defendant cannot complain. The jury found that defendant did not comply.

For defendant to avail the plea of overmastership, or subjection to the surgeon, which is settled law, it must meet the requirement that the surgeon "actually exercised supervision and control over the servants" of the hospital (Thomas v. Great Western Mining Co., 150 Okla. 212, 1 P. (2d) 165) at the time of the negligence, or lack of care, "to protect its patients in such manner as their condition may render necessary" arose, etc. (Juby Case, supra). It is found by the jury to the contrary. In that we agree.

The record shows that plaintiff was burned after the departure and in the absence of the employed surgeon, Dr. Miller, and by some one of the hospital servants putting the lamp g'obe on her without direction, and covering it with a towel, while she was unconscious and on the verge of death from heart failure, and in the presence of two other nurses. This was uncontroverted and sufficient to sustain the verdict on lack of ordinary care and protection. There is no record of the terms, conditions, duration of time, or other, of the contract of plaintiff with the surgeon, Miller. For this case we must infer that the surgeon rightly departed immediately after the operation, as defined above. That issue might, or might not, have been tried in the other case referred to herein.

It is insisted that the presence of Dr. Summers in the room when plaintiff was burned excused defendant hospital from its duty of ordinary care and competent employees, to protect plaintiff, but the testimony by Dr. Summers, uncontroverted, was that he had declined the operation, and plaintiff had employed Dr. Miller, who took the case eleven days before the operation. There was no evidence of Dr. Summers' employment by plaintiff to attend her at the hospital, and no evidence that he had any authority from plaintiff at the time to "actually exercise supervision and control over the servants" of the hospital for the plaintiff.

We find only one other case similar to the case at bar wherein the operating surgeon's liability is defined as a matter of law under similar conditions. This is Marchand v. Bertrand, Rap. Jud. Quebec, 39 C. S. 49, found in "Quebec Official Law Reports, Superior Court, vol. 39, page 49, 1910" in the State Library. This case is well written and carefully considered, but reported in French. We will, therefore, refer to it rather than quote from it. In that case an elderly patient was operated on by two surgeons—administering chloroform. At the end of the operation heart failure threatened his life and the the surgeons ordered the nurses to place warm water bottles and warm bricks about him. The court held that in view of the emergency confronting the physicians and surgeons, they could not be held responsible for the carelessness of the hospital attendants in overheating the bricks; that, absorbed as they were in the major requirements of the threatened death of the patient, they were excused from observing minor details such as overheated bricks. Reference to this case is further found in 60 A. L. R. 152, note, and is a fair resume:

"A physician who is working over a patient just after an operation, to save him from heart failure, is not responsible for the negligence of a nurse who burns the patient with overheated bricks, it being clear

that where immediate emergency requires all the doctor's attention, he must leave details to the nurse."

It seems to us that this Canadian authority is consistent and corroborative of the above authorities. The distinction of fact is that the Canadian surgeons were plaintiff's employees, and were present and ordered the warm bricks applied, but incompetent hospital employees used burning bricks. Here the lamp was placed on the patient, concealed with towel, by hospital servant without order, although light was called for by some one not identified. It seems clear that defendant did not "employ only competent nurses" as required under the Tulsa Case, 73 Okla. 243, 175 P. 519, supra, and as hired by plaintiff.

It goes, of course, to defense by, and relief of, the operating or directing surgeon or doctor for fault or negligence of hospital attendants not known or discoverable by the doctor or surgeon in the exercise of care and skill by him in his engagement, as ruled in Harris v. Fall, 177 Fed. 79 (C. C. A.). That rule does not excuse the hospital for lack of ordinary care; lack of competency of its servants furnished; even charity hospitals are held liable in a multitude of cases for providing incompetent servants. They charge for, and engage to provide, only competent servants, and the safety of both patient and surgeon rests in their compliance.

In the Harris Case the trial court instructed as to the surgeon:

"It was his case, and he must discharge his obligation to the plaintiff under the facts in this case as if he had no house physician associated with, or participating with, him in the care and treatment of this plaintiff."

Under this instruction the case was reversed by the Circuit Court of Appeals, the court saying:

"We believe no such undertaking on the part of Dr. Harris can reasonably be presumed under the evidence, and that it is without the sanction under any authority called to attention. The proposition ignores these potent facts: The patient entered the Polyclinic Hospital, contracted there for his room and accommodations, and received care and treatment from its nurses and house physicians throughout his stay, for which he made weekly payments; and the hospital was incorporated for general hospital purposes, under management of a board of trustees, was neither owned nor controlled by Dr. Harris, nor were the house physicians selected or engaged by him, nor within his control, except as their services were tendered as part of the hospital service. * * *

"So these hospital attendants, known as 'internes' (usually young physicians), are furnished at the general hospitals to attend to the ordinary work of dressing and treating the wound (left by an operation) on the way to recovery; and the mere undertaking of the surgeon to operate, under call or engagement therefor, cannot, as we believe, imply his further personal undertaking for the ordinary details of after-treatment, to make the doctrine of respondeat superior applicable, to charge him for fault or negligence on the part of such hospital attendants, neither known nor discoverable by the surgeon in the exercise of care and skill throughout his engagement. No doubt is entertainable, however, that the professional undertaking in the case at bar extended as well to the subsequent visits, observations, and personal treatment in evidence with the attendant obligation for the exercise of skill and care therein."

The last sentence above quoted indicates clearly the professional undertaking of the operative surgeon, but not to respond "for fault or negligence on the part of such hospital attendants, neither known nor discoverable by the surgeon in the exercise of care and skill throughout his engagement." His duty and liability arises by reason of his employment by the patient. So does that of the hospital, who becomes the superior immediately and whenever the surgeon employed by patient is absent, as adjudged in the Harris Case.

Other pleas are presented.

Defendant hospital entered also plea of res judicata by reason of the judgment for plaintiff against Dr. Miller and Dr. Summers in another case and offered pleadings and journal entry of judgment in that case, which were, by the trial court, refused, excepted and which we have considered.

In that action this defendant hospital attempted to be made a party, and pleaded so to, but by mistake was not a party and did not plead. The evidence and instructions in that case are not before us. Privity is not pleaded in either case, nor attempted to be proven in this record. There is lack of identity of parties or privies, of issues and subject-matter, required by this court. Howe v. Farmers & Merchants Bank, 129 Okla. 232, 264 P. 210; Fullerton v. State, 140 Okla. 122, 282 P. 674.

"Subject-matter is the subject, or matter presented for consideration." 27 A. & E. Enc. Law, 195.

"The thing in dispute." Bouvier.

"The right which one party claims as against the other, as the right to divorce; of ejectment; to recover money; to have

foreclosure; the thing in dispute." 27 A. & E. Enc. Law, 196, notes.

Otherwise expressed, the subject-matter is the real issue of fact or law presented for trial, as between those parties; in this instance, the right to recover from the hospital.

We cannot know what facts were proven to fix the liability of the defendants in the other case; many are imaginable, into which we cannot go; or are sufficient facts present here to make the judgment in the other case a bar for this defendant, if Dr. Miller, plaintiff's employed surgeon, and the hospital were joint tort-feasors, then the previous judgment against part would not be a bar to proceedings against these others, severally or collectively. If they were not joint tort-feasors, then, of course, a several judgment against one might not be a bar as to the other. Here the subject-matter is the right of plaintiff to recover from the hospital for its nonperformance of its contract for ordinary care and competent protection as a hospital under the rule of law as declared. In the other case it could not well have been tried whether defendant hospital had complied with its contract to provide plaintiff competent servants, ordinary care, and protection, because it was not a party.

There was no error in overruling defendant's motion for continuance. Pleadings and judgment in the other case, offered in support thereof, did not call for its continuance. The equipment of the hospital is not liable, for want of proper equipment is not involved here. The hospital's liability here is based on lack of competent servants and ordinary care, in fact, gross carelessness and disregard on the part of its servants towards one of its patients; it only sought to escape on the plea that its servants were actually under the control and supervision exercised by another employee of plaintiff, the surgeon, absent at time of burn.

The case was ably briefed, and led to examination of hosts of cases, and possibly to a too extended an opinion.

As suggested in many cases, for the court, as a matter of law, to overrule the jury's findings of fact as exhibited in this case would penalize the surgeon and medical profession beyond all proper limits. A surgeon would not dare leave a patient in a hospital without a bonded surgeon. We approve the doctrine of the Harris Case, supra, that the jury is the best trier of fact in fixing responsibility for a particular injury.

In this view we find the jury properly instructed and the refused instructions to be without material injury and without error. The other alleged errors need not be referred to herein, for the same reason. Judgment affirmed.

The Supreme Court acknowledges the aid of Attorney E. E. Blake in the preparation of this opinion. Mr. Blake was one of an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court, the other two members not participating. After the analysis of law and facts was prepared by Mr. Blake, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, V. C. J., and RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.