The CITY OF OKMULGEE, Oklahoma, a Municipal Corporation, Plaintiff in Error,

v.

Gladys CLARK, Defendant in Error.

No. 40979.

Supreme Court of Oklahoma.

Feb. 28, 1967.

Rehearing Denied March 28, 1967.

D. F. Rainey, Okmulgee, for plaintiff in error.

Boatman, Pugsley & Boatman, by Edgar R. Boatman, Okmulgee, for defendant in error.

PER CURIAM.

This is an action by Gladys Clark, hereinafter referred to as plaintiff, to recover damages for personal injuries sustained by her while a patient in the City Hospital of Okmulgee, operated by the City of Okmulgee, Oklahoma, a Municipal Corporation, hereinafter referred to as defendant.

Plaintiff's amended petition alleges, in substance, that while a patient in the hospital, operated by defendant, she sustained certain injuries to her right foot and ankle, the right side of her body from the foot to the lower back up through the right shoulder and right arm and up to the base of her skull, by virtue of the negligence of the defendant in furnishing certain equipment in the room occupied by plaintiff which caused plaintiff to fall while getting out of bed on the morning of March 7, 1961, to use the bathroom. The amended petition further alleges negligence in that the plaintiff was given a hypodermic sedative a short time before her fall; that a footstool used by plaintiff as an aid in getting in and out of bed was moved partially under the bed by the nurse without informing the plaintiff; and that the nurse failed to take plaintiff to the bathroom knowing she would be in a poor condition to transport herself after having had this sedation. The plaintiff prays for judgment for pain and suffering already experienced, pain and suffering reasonably anticipated to be suffered in the future, loss of earning capacity, and medical bills, both past and future. Defendant's answer, in effect, alleges that a plaintiff's damages, if any, resulted directly and proximately from her own conduct, contributory negligence and assumption of risk.

The evidence of the plaintiff establishes substantially the following state of facts:

Plaintiff entered the Okmulgee City Hospital on March 1, 1961, for treatment of a bronchial infection. At the time of the accident complained of, she was apparently about to be discharged by her doctor. The accident occurred about 6:30 a. m. the morning of March 7, 1961. Plaintiff had been a patient in the hospital on several previous occasions during which the conditions were similar to those at the time of the accident. During her stay in the hospital plaintiff was ambulatory and had "bathroom privileges" which means she was free to get up and move about as she wished day or night. Plaintiff testified that the bed in her room was of such height that it was necessary for her to use a footstool to get in and out of bed. She testified that the top of the bed was even with the top part of her stomach when she was standing by its side. She had used the stool in question during her stay at the hospital without trouble up to the time of the accident. Plaintiff then testified she asked for a sedative during the night to help her sleep and was given one about 3:00 or 4:00 o'clock in the morning of the 7th of March; she awoke about 6:30 and had to go to the bathroom; she did not ring for the nurse; the stool did not seem to be where she left it the night before but rather was pushed part way under the bed; she put her feet on the stool and it slipped with her and she fell to the floor. The evidence further disclosed that later that day plaintiff's husband, while visiting her, pulled the stool out to sit on it and noticed it kept sliding; he inspected the bottom of the stool legs and saw that the rubber caps were completely worn away to expose the metal of the legs. After the fall, plaintiff's doctor put a cast on the leg injured in the fall. Some time after the cast was removed, plaintiff sought treatment from a Doctor of Chiropody, who testified in her behalf at the trial. At the completion of plaintiff's evidence, the defendant demurred.

Defendant's first contention is that the record is devoid of any evidence of primary negligence on the part of the defendant and that the undisputed evidence discloses that the fall of plaintiff resulted from some acts performed by plaintiff and therefore defendant's demurrer to the evidence should have been sustained.

With this contention we can not agree.

In Flower Hospital v. Hart, 178 Okl. 447, 62 P.2d 1248, we held:

"A hospital which is conducted for private gain receives patients under an implied obligation that it will exercise ordinary care and attention for their safety; and that such degree of care and attention should be in proportion to the physical and mental ailments and condition of the patient; the question whether or not such requirements have been met presents an issue of fact to be determined by the jury."

In Duke Sanitarium v. Hearn, 159 Okl. 1, 13 P.2d 183, we held:

"Negligence on the part of a hospital in the care and treatment of a patient consists in doing something which it should not have done or in omitting to do something which it should have done."

The above holdings were restated in Hillcrest Medical Center v. Wier, Okl., 373 P.2d 45.

The record shows that the defendant furnished a footstool in the plaintiff's room for use in climbing in and out of bed and that plaintiff had to make use of this stool for such purpose. The evidence shows that the rubber caps on the legs of said stool had worn down to the metal and that, as a result, the stool was more inclined to slide than if the rubber caps were intact. Considering the use to which defendant knew the stool would be put, we feel that such evidence establishes a prima facie case of primary negligence on the part of defendant. The plaintiff testified that in attempting to use the stool on the morning in question the stool slid with her and the jury was en-

titled to find that the sliding effect was caused by the worn caps. The fact that plaintiff may not have placed her weight squarely on the stool which contributed to the sliding motion would not excuse the primary negligence of defendant in furnishing a defective stool in the first instance. The jury was entitled to find that but for the worn caps the stool would not have been inclined to slide notwithstanding the plaintiff's failure to place her weight squarely on the same. Such a happening should certainly have been foreseeable by defendant and in fact in our opinion was an expected consequence considering the usage to which said stool was put. In addition, there was evidence that after sedating the plaintiff, the defendant moved the stool to a new position without informing the plaintiff. The jury could have concluded that this was a contributing cause to the accident. Also the fact that plaintiff had been using this stool for just over six days would not affect the prima facie case of negligence against the defendant, but would rather go to the defense of contributory negligence which the defendant pled and on which the court instructed the jury. In a civil action, plaintiff is not required to prove his case beyond a reasonable doubt. All he must prove is facts making it appear more probable that the injury came in whole or in part from defendant's negligence than from any other cause. Morningside Hospital & Training School for Nurses v. Pennington, 189 Okl. 170, 114 P.2d 943. The finding of a jury upon questions of fact are conclusive where the evidence reasonably tends to support such findings. Sisters of the Sorrowful Mother v. Zeidler, 183 Okl. 454, 82 P.2d 996; Duke Sanitarium v. Hearn, supra.

The defendant next contends that the trial court improperly permitted the jury to consider evidence which was prejudicial to the defense.

First, defendant contends that the testimony of Robert Crotty, a licensed Doctor of Chiropody, was objectionable in that the practice of Chiropody is limited to treatment of the foot and the witness was permitted to testify that in his examination and diagnosis of plaintiff he found pain and tenderness in other parts of her body including the lower leg, knee, thigh, low back area, shoulder area, base of the skull, neck area, over the temples and over the eye. It should be noted that the witness's testimony as to the injury of plaintiff and her treatment of that injury was limited to the foot of the plaintiff (as defined by the witness and no other definition was offered by defendant) and the witness testified that in his education and training as a Chiropodist he was trained very thoroughly in the area of the body from the pelvis down, that he studied the entire body under medical doctors, and that his work with the foot may have an effect in the upper body. He further testified that although the treatment was confined to his specialty which is the foot, practitioners of his specialty use the entire body for diagnostic purposes. It should be noted that defendant did not offer any evidence to counter such statements and it appears reasonable to this court that in determining cause and effect (which is involved in both diagnosis and prognosis) a practitioner specializing in treatment of one part of the body, only, may take into consideration the interrelation between that part of the body and other parts of the body to which it is connected directly or indirectly by muscles, ligaments, bones and nerves. Neither the foot nor any other single part of the body functions absolutely independently of all other portions of the body.

The question asked of the witness was limited to his findings that would affect his treatment of the foot and the related injury. We feel it proper for the witness to testify as to the areas he found it important to consider in diagnosing a condition of the foot and prescribing his treatment. Defendant could have offered expert testimony contravening the force of his findings and it would then have been

the province of the jury to determine the weight to be given the evidence.

■ In support of its contention, defendant cites 59 O.S.1961, § 142, which defines acts constituting the practice of Chiropody for licensing purposes. The practice of Chiropody is defined as "in any way examining, diagnosing, recommending for, prescribing for, caring for or treating in this State ailments, diseased conditions, deformities or injuries of the human foot (except amputation of the foot), whether or not done directly thereon * * *." We find nothing in this definition which would prevent a licensed Chiropodist from referring to other parts of the human body as an aid to diagnosis of an injury to the foot or that in so doing the witness was attempting to practice a healing art outside his licensed specialty.

■ This court in the case of Oklahoma Natural Gas Corp. v. Schwartz, 146 Okl. 250, 293 P. 1087, discussed the admission of testimony as an expert witness of one who is not a medical doctor, but who is licensed by the state to the practice of his specialty. To paraphrase our holding in that case: The Legislature of this state has seen fit to provide, by law, the licensing of Chiropodists. The testimony of the Chiropodist covered the particular field of his professional knowledge and he was shown to be qualified as an expert on the matter about which he testified. The treatment of human injuries and ailments, like the law, is not an exact science. Whether the witness was correct in his diagnosis of plaintiff's injuries and in his conclusion as to the probable result of them was a question for the jury. The court held as it has on many other occasions that whether a witness shall be permitted to testify as an expert rests largely in the discretion of the trial court and his decision upon this question will be reversed only where the error is clear.

The defendant next contends that the trial court committed error in permitting the introduction of a mortality table and the giving of an instruction relating to plaintiff's life expectancy under the mortality table which was not pled and was not an issue in the case.

■ It is noted that plaintiff alleged she suffered permanent injury and her medical expert testified that in his opinion her injury was of a permanent nature. The evidence also disclosed plaintiff's age. It appears that the defendant's sole objection to this evidence is that plaintiff did not specifically plead her life expectancy.

Prior to plaintiff resting, the following exchange took place:

"Mr. Boatman: May it be stipulated by and between the parties that the plaintiff herein has a life expectancy of thirty years? Mr. Rainey: I will stipulate that would be her life expectancy, but it is not competent. I object to it for that reason. You don't plead it and for that reason, I object to it. I am not going to require the showing of the book."

This court has held that a proper foundation for admission of a mortality table has been laid where there is some evidence tending to show that the injuries are of a permanent character. Jones v. Eppler, Okl., 266 P.2d 451, 48 A.L.R.2d 333. There is no necessity that the mortality tables, themselves, be specifically pled. It is sufficient foundation for their admission in evidence that permanent injury is pled and established by competent evidence.

The judgment of the trial court is therefore affirmed.

This Court acknowledges the services of Richard N. Steed who with the aid and counsel of Harris Van Wagner and John Goode, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon

consideration by the Court, the foregoing opinion was adopted.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.