49321. SU v. PERKINS et al.

ARGUED MAY 9, 1974 — DECIDED DECEMBER 5, 1974.

*Oliver, Maner & Gray, Thomas S. Gray, Jr.,* for appellant.

*Bouhan, Williams & Levy, James M. Thomas, Jones, Cheek & Smith, John Wright Jones,* for appellees.

PANNELL, Presiding Judge.

Mrs. Fannie Lou Perkins and her husband, Kenneth Perkins, as plaintiffs, filed a complaint in the State Court of Chatham County, Georgia, against Shaw C. T. Su, M. D., and Candler-General Hospital, Inc., as defendants, on August 15, 1973, alleging that plaintiff, Fannie Lou Perkins, while hospitalized at Candler, as a patient of Dr. Su, was negligently administered an injection, or shot, in her left buttock, that such injection was administered by a

nurse, agent, and servant of defendants, and that as a result of the injection and the ensuing complications, plaintiff suffered certain damages. The complaint alleges that at the time of her injury, plaintiff was under the sole and complete control of her doctor and the hospital and that defendants did not use ordinary care and caution in treating and caring for the plaintiff at the time she was under their custody and control. Defensive pleadings were filed by both defendants denying the material allegations of the complaint.

A motion for summary judgment was filed by defendant, Dr. Su, with his affidavit attached thereto, on September 17, 1973. Plaintiff subsequently deposed Dr. Su, Dr. John S. Wade, and nurse Julia T. Baughman. The discovery deposition of plaintiff was taken by Candler. Plaintiffs filed three responses to defendant's motion for summary judgment, attaching thereto, respectively, the affidavits of plaintiff, an associate of plaintiff's attorney, and plaintiff's attorney. Defendant filed written objections to plaintiffs' responses to defendant's motion for summary judgment, said objections being based on the fact that the aforesaid affidavits were not made on personal knowledge and contained inadmissible conclusions. Candler filed a response to defendant's motion for summary judgment, attaching thereto the affidavit of nurse Julia T. Baughman.

Defendant's motion for summary judgment was denied by the trial court on February 5, 1974, and on February 7, 1974, a certificate of review was granted by the court certifying for review its order denying said motion for summary judgment.

The evidence adduced on the motion showed substantially the following facts: On August 17, 1971, plaintiff was admitted to Candler-General Hospital in Savannah as a patient of defendant. On August 30, 1971, while a patient in the hospital, plaintiff was operated upon. She was discharged on September 9, 1971. During her hospitalization plaintiff was administered injections of morphine and vistaril, said medication being prescribed by defendant. On September 3, 1971, plaintiff, at her request, was administered an injection of morphine and vistaril by nurse Julia T. Baughman, said medication

having been prescribed by defendant. Defendant doctor acknowledged that the patient was considerably overweight and that the defendant had prescribed the use of vistaril and was familiar with the counter-indications of the manufacturer of vistaril; but in prescribing vistaril for plaintiff, defendant left no instructions with the hospital as to the size of the needle, use, and length, and he did not prescribe how or where the drug was to be administered, although he knew of her obese condition and realized that a person who has an excessive amount of subcutaneous tissue requires a longer needle to traverse the subcutaneous tissue. Mrs. Baughman, on said date, was employed by Candler-General Hospital as a licensed practical nurse, and was well qualified to administer said injection. She had become employed by the hospital on July 12, 1971, after graduating in June, 1971, from Savannah Vocational School as a licensed practical nurse. She was off duty with the hospital from August 29, 1971 until September 3, 1971. On September 3, 1971, Mrs. Baughman was the medications nurse but she has no independent recollection of administering the injection to plaintiff. Plaintiff positively identified Mrs. Baughman as being the nurse who gave the injection. The administration of injections to patients constituted a part of Mrs. Baughman's duties at Candler Hospital. She was not an employee, agent, or servant of defendant, Dr. Su, nor was she acting under the supervision, control or direction of defendant at the time the injection was administered. Defendant was not present when said injection was administered. The drug was administered to plaintiff only upon the authorization and prescription of defendant and defendant did not give any instructions or warnings as to the mechanics by which the drug was to be administered or the possible dangerous qualities of the drug, if any. The injection created a burning sensation in the left buttock of the plaintiff at the injection site and "burned like fire." Plaintiff advised Mrs. Baughman at the time said injection was being administered that it was burning her and requested that she take it out. Mrs. Baughman "put the needle on down" into plaintiff and administered the injection. Prior to receiving the injection in question, plaintiff had received other

injections of morphine and vistaril, none of which caused a burning sensation or any special discomfort of any kind. The prior injections also gave plaintiff relief from her pain. Plaintiff's pain from the injection lasted throughout the day and into the next morning. Plaintiff requested the head nurse at Candler to look at the site of the injection and plaintiff described to the head nurse what had happened to her concerning the injection.

Dr. John S. Wade, the surgeon who subsequently examined Mrs. Perkins and performed surgery on her left buttock, found that plaintiff had devitalized tissue of the left buttock, secondary to the injection, and found that plaintiff's condition was consistent with improper injection of medication in the subcutaneous tissue. Nurse Julia T. Baughman had previously administered injections of morphine and vistaril on many occasions. Vistaril is a commonly used drug, and is administered to patients in combination with morphine on a daily basis at Candler Hospital. Its purpose is to increase the activity of the narcotic or pain relieving drug, thereby decreasing the amount of morphine required; additionally it has a mild sedative effect. The manufacturer's vials containing vistaril, which are sold to hospitals, have instructions thereon as to the effect that the medicine is to be injected intramuscularly, not subcutaneously. The plaintiff is obese and nurse Baughman testified she would anticipate that more subcutaneous tissue would be present in plaintiff's left buttock than in more slender persons, and therefore more distance would be traversed from the outer skin to the muscle into which the injection was to be administered; that she, of necessity, would see the body and size of any patient to whom she was going to administer an injection and would be able to draw an opinion as to the size needle which should be used. She would use a 1 1/2 inch needle in administering a shot to plaintiff. She knows that vistaril is not to be administered subcutaneously and should be administered intramuscularly. Before administering an injection, she reads the instructions on the vial and knows whether it is to be given intramuscularly. Before administering an injection, she would first determine whether the last shot was administered on the left side or right side. If there

were no markings or swelling or anything else present, she would select an injection site by feeling with her hand and then administer the injection. Registered nurses and licensed practical nurses are authorized to administer injections at Candler Hospital and both types of nurses are well qualified to administer injections. The instructions from Dr. Su on the physician's order sheet concerning the administration of injections of morphine and vistaril to plaintiff were clear to Mrs. Baughman. If the physician should leave orders which Mrs. Baughman did not understand, she would call the physician or consult with the nursing supervisor. The information furnished Mrs. Baughman on the chart, concerning the medications prescribed by defendant for the plaintiff, was completely adequate for Mrs. Baughman's purposes and clear to her as to how they should be administered.

Vistaril, in combination with morphine, is a routine medication that is administered by injection on a daily basis by licensed practical nurses or registered nurses without the direct supervision of the physician. In the vast majority of cases the physician is not present when such medication is administered. Mrs. Baughman did not expect the physician's orders to show the size of the needle the physician expected her to use in administering the injection, and she does not rely on any such information being furnished by the physician.

Dr. Wade testified that plaintiff's size would probably have required a 1 1/2 inch needle in order for the medication to have been injected deeply or well into the large muscle of the left buttock. Needles 1 1/2 inches in length are readily available in hospitals such as Candler. Dr. Wade customarily designates the quantity and frequency with which morphine or vistaril is to be administered and under what circumstances, but the actual administration of the medicine is made without the presence of the physician. It is not necessary for the physician to be present. Customarily and routinely the administration of the injection and the determination of the size of the needle to be used are left up to the nurse. Dr. Wade has never prescribed special instructions for nurses with reference to the administering of injections to overweight patients.

Dr. Su testified that treating a patient with a large amount of fat does not require more than the average amount of expertise or knowledge on the part of the nurse, and no special nurse is required to administer injections to such a patient. Both Dr. Su and Dr. Wade testified the administration of an injection to hospital patients by hospital personnel of the type which was administered to plaintiff does not involve the application of specialized medical knowledge, skill or experience, and does not require the presence or direct supervision of the treating physician or a warning or advice of risk of injury to the patient, and the administration of such injections by hospital personnel is a standard or routine nursing service or activity carried out by such personnel and constitutes proper and accepted medical practice.

1. The injury to the plaintiff and the cause thereof by an improper injection, and the person who administered the same, is well established by the evidence. The alleged negligence of the doctor centers around the giving of the injection, not the treatment prior thereto, or thereafter. The contentions are that the doctor was under a duty to instruct the nurse in the proper method of injecting the drug, to warn her of the dangers of an improper injection, or to personally supervise the same. The nurse was an employee of the hospital, not the doctor, so the doctor is not liable on the basis of respondeat superior. *Porter v. Patterson,* 107 Ga. App. 64 (1) (129 SE2d 70). The evidence was uncontradicted that the nurse was trained and qualified in the giving of such injections and was duly licensed, and that it was the custom and practice to leave the administration of drugs to the nurses, and that the doctors do not have responsibility therefor. See in this connection *Porter v. Patterson,* supra.

2. Was the doctor here under a duty to instruct the nurse as to the proper method or the danger of an improper injection of the drug? And if so, was the failure to do so a proximate cause of the injuries?

In our opinion, the principles of law governing this case have already been established in the case of *Porter v. Patterson,* 107 Ga. App. 64, supra, in which this court said: "Accordingly, following the lead of the Minnesota Supreme Court, 'we adopt the rule that a hospital is lia-

ble for the negligence of its nurses in performing mere administrative or clerical acts, which acts, though constituting a part of a patient's prescribed medical treatment, do not require the application of the specialized technique or the understanding of a skilled physician or surgeon. This rule, in recognizing that the right of control remains with the hospital as the general employer, is consistent with the nature of such acts and is in accord with the custom which in everyday practice governs the relationship between the hospital staff and the attending physicians.' "

In that same case, the following appears: "Many courts have increasingly recognized that a hospital has a responsibility for the exercise of due care by a nurse (as well as by other hospital employees) while she is performing acts of a character which, *though constituting a part of the patient's treatment as prescribed by the attending physician, do not require either the application or the understanding of the specialized technique possessed by a skilled physician or surgeon.* (See Dillon v. Rockaway Beach Hospital, 284 NY 176, 180, 30 NE2d 373, 374; Rabasco v. New Rochelle Hospital Assn., 226 App. Div. 971, 44 NYS2d 293, 294; Pivar v. Manhattan General, 279 App. Div. 522, 110 NYS2d 786; Flower Hospital v. Hart, 178 Okla. 447, 62 P2d 1248; Rice v. California Lutheran Hospital, 27 Cal. 2d 296, 163 P2d 860; *Piedmont Hospital v. Anderson,* 65 Ga. App. 491, 16 SE2d 90; Clerk & Lindsell, Torts (11th Ed.) § 619 (containing summary of holdings of British decisions); cf. Malkowski v. Graham, 169 Wis. 398, 172 NW 785, 4 ALR 1524, and Olson v. Bolstad, 161 Minn. 419, 201 NW 918.) In taking this view these courts classify the acts of nurses and other employees for which a hospital is liable in tort as administrative or clerical acts, and the acts for which it has no such liability as those which require an exercise of medical skill or judgment. (See 41 CJS, Hospitals, § 8, p. 348.) Whether an act is merely administrative, so that negligence in its performance is imputed to the hospital, or nonadministrative depends on the nature or character of the act. (Dillon v. Rockaway Beach Hospital, 284 NY 176, 180, 30 NE2d 373, 374; Ranelli v. Society of New York Hospital, 49 NYS2d 898.)" (Emphasis supplied.)

It is undisputed in the present case by the testimony of the defendant and another doctor, a witness for the plaintiff, that the administration or injection of a drug into the muscle does not require an exercise of medical skill or judgment.

The drug was one in common use and had been given to the patient on prior occasions. The doctor was under no duty to anticipate that the nurse would be negligent in giving the injection.

" 'Negligence or breach of duty is not to be anticipated, but until the contrary is shown it is to be presumed that every man obeys the mandates of the law and performs all of his social and official duties.' *Beavers v. LeSueur,* 188 Ga. 393, 402 (3 SE2d 667). To the same effect, see *Suddath v. Blanchard & Calhoun,* 39 Ga. App. 262 (2) (146 SE 798). 'It is never to be presumed that a person will commit a wrongful act or will act negligently or improperly.' *Atlantic C. L. R. Co. v. Brown,* 82 Ga. App. 889, 892 (62 SE2d 736). 'Where no unusual features are involved which call for an exercise of medical skill or experience, *a doctor may reasonably take for granted that the experienced nurses on the staff of a modern hospital will attend to their ordinary and customary duties without detailed instructions.* See Annotation, 4 ALR 1527.' " (Emphasis supplied.) *Porter v. Patterson,* 107 Ga. App. 64, 74, supra. See also Moore v. Guthrie Hospital, Inc., 403 F2d 366 (4th Cir.); Slack v. Crawford, 131 F2d 101 (5th Cir.). This being so, the improper administering of the drug by the nurse was not a risk or hazard which the defendant doctor was under a duty to have perceived and guarded against.

3. Further, the nurse involved knew of the danger of the particular drug if administered improperly and knew that a longer needle should be used on obese persons, such as plaintiff. Whether a longer or shorter needle than required was used, does not appear. The nurse had no recollection of the particular occurrence. However, since it appears that the nurse at the time had such a knowledge of the dangers of the drug and of the improper administration thereof, and also had knowledge of the proper method of administration, and the drug was one in common usage, to ease pain, we are unable to see how the

failure of the doctor to warn or instruct her in relation thereto, even should we assume he did have a duty to do so, had any causal relation to the alleged improper administration of the drug. There need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession. Rosebrock v. General Electric Co., 236 N.Y. 227, 238 (140 NE 571).

4. The following questions on interrogatories were asked and the following answers were given by Dr. Su. *Interrogatory No. 26:* Do you contend that a person other than yourself was responsible in whole or in part for the occurrence of the complications referred to in the preceding interrogatory? If so, for each person state: (a) His name, address and job title or capacity; (b) The facts on which you base your contention that he was responsible for such complications. *Answer:* Defendant answers Interrogatory No. 26 by stating that he was in no way responsible for the occurrence of the complication in question. Defendant does not know the exact cause of such complication and therefore does not contend that any other party was responsible for such complication. *Interrogatory No. 35:* Taking into consideration everything that you presently know concerning the patient involved in this case, and the condition for which you rendered treatment, state whether or not in your opinion at the present time any complication referred to previously in these interrogatories could have been avoided during the course of the patient's treatment by you? If, upon such a consideration of the case at the present time, you have an opinion that a complication could have been avoided in such a manner, please describe what step you feel could have been taken or could have been avoided so as to prevent the complication. *Answer:* Answering Interrogatory No. 35, defendant states that the complication in question did not arise as a result of defendant's treatment of the plaintiff, and therefore, could not have been avoided by defendant. It is unknown whether pla. ntiff's complication could have been avoided by reason of any action taken by others.

These answers cannot be construed as an *admission of responsibility* for the plaintiff's condition on the part of Dr. Su. This is not construing his testimony most strong-

ly against him as a movant on a motion for summary judgment; this is a clear misconstruction of his statements. It merely means what it says and nothing more.

5. We accordingly, are constrained to the view that the trial judge erred in overruling the defendant's motion for summary judgment.

*Judgment reversed. Bell, C. J., Deen, P. J., Quillian, Clark, Stolz, Webb and Marshall, JJ., concur. Evans, J., dissents.*

EVANS, Judge, dissenting.

Mrs. Fannie Lou Perkins was recuperating from surgery performed by Doctor S. C. T. Su at Candler-General Hospital in Savannah, Georgia. Doctor Su had prescribed injections of vistaril and morphine. Julia T. Baughman, a licensed practical nurse, who was an employee of the hospital, administered an injection of this medication to the patient's left buttock, resulting in pain, discomfort, discoloration and requiring further surgery and removal of a part of her left buttock.

Mrs. Perkins and her husband sued Doctor Su and Candler-General Hospital for damages for failure to exercise reasonable care in looking after and protecting the patient as her condition required, and in failing to so protect her.

Discovery was had, after which Doctor Su filed a motion for summary judgment, contending it was the hospital's responsibility to see that Nurse Baughman properly administered the injection. (Plaintiff's complaint however went further than as described in defendant's motion for summary judgment; and specifically in Paragraph 9 alleged as follows: "Plaintiffs further say that said Defendants, under the circumstances in which Plaintiff patient was injured, are charged with the duty to *exercise reasonable care in looking after the patient and protecting the patient as the patient's condition may require and said defendants did fail to so protect Plaintiff patient.*" (Emphasis supplied.)

The motion for summary judgment was by the lower court denied. He appeals, and a majority of this court holds that the lower court should be reversed, the effect of

which is to absolve Doctor Su of all liability in this case. I vigorously dissent and set forth the reasons for such dissent hereafter.

1. The burden is upon the movant in a summary judgment proceeding to demonstrate the absence of any issue of substantial fact. *Brown v. Sheffield,* 121 Ga. App. 383 (173 SE2d 891). Further, the respondent is given the benefit of all reasonable doubts and favorable inferences that may arise from the evidence. *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (129 SE2d 408); *Candler General Hospital v. Purvis,* 123 Ga. App. 334 (181 SE2d 77); *Burnette Ford v. Hayes,* 227 Ga. 551 (181 SE2d 866).

2. Doctor Wade, the surgeon who removed the dead tissue from the plaintiff's left buttock, testified that in his opinion her condition was due to the improper administration of a medication into the subcutaneous tissue (just under the outer layer of skin) instead of intramuscular (into the muscle) as required by the medication. This witness also testified that because of obesity (she was 5 feet 2 inches tall and weighed 165 pounds and was 48 pounds overweight) the patient needed a longer needle to insure that the injection went into the muscle instead of the subcutaneous tissue.

3. The patient was left in charge of Nurse Baughman, a licensed practical nurse, and although she professed not to remember administering the injection, the weight of evidence indicates that she did so.

4. Doctor Su admitted that obese patients require greater care after surgery than normal patients; that they are subjected to a greater risk of complications after surgery. Doctor Su also admitted that he gave no special instructions to the nurse as to the way and manner in which the medication should be administered; did not discuss with her whether it should be a subcutaneous injection or a muscular injection; or the danger inherent in failing to properly inject same intra-muscularly; nor was the required length of the needle discussed. Doctor Su, defendant, in his sworn response to interrogatories on November 3, 1973 (more than two years after the injection) made the following admission: "Defendant does not know the exact cause of such complication and

therefore *does not contend that any other party was responsible for such complication.*" (Tr. p. 96) (Emphasis supplied.)

Doctor Su further testified by answer to interrogatories:*"It is unknown whether plaintiff's complications could have been avoided by reason of any action taken by others."* (Tr. p. 97) (Emphasis supplied.) He testified that the manufacturer of this drug printed instructions thereon, as follows: "Intended for intramuscular administration and should not under any circumstances be injected subcutaneously, intraarterially or intravenously." but that he did not so instruct the nurse (Tr. pp. 226-227). When asked as to what explanation he had for the patient's trouble, he answered:"One guess—*she could have had a subcutaneous injection of vistaril;* she could have had a sensitivity reaction. She could have formed a hematoma—hemorrhage inside." (Tr. p. 227) (Emphasis supplied.) Again he was asked as to any thought he had as to what caused the necrosis (deadening effect) of the tissue and he answered: "*I thought it was the injection* but the result I'm not sure." (Tr. p. 234) (Emphasis supplied.)

Doctor Su, asked as to his knowledge of the patient's higher risk of complications following surgery because of her obesity and as to what special instructions he gave as to such possible complications, remembered no instruction except prescribing support stockings for her lower extremities (Tr. pp. 236-237).

5. Thus, this case for plaintiff shows that the patient received a serious injury, while she was a patient of Doctor Su, because of an injection of vistaril, which he had prescribed; that he knew of her high risk of complications because of her extreme obesity following surgery but gave no instructions to combat same except the wearing of support hose; that he did not give the nurse any instructions as to the danger of injecting vistaril into the inner layer of skin, rather than into the muscle, although the manufacturer plainly warned against same; and most important, that Doctor Su, defendant, *"does not contend that any other person was responsible for (her) complication."* (Emphasis supplied.) Doctor Su admitted that he thought the injection while plaintiff was his

patient, caused the trouble.

6. As against the above statement — and remembering that all conflicts in and inferences arising from testimony in summary judgment cases must be construed most strongly *against movant* — Doctor Su and one other doctor testified generally that the custom and practice is to leave the administering of drugs to the nurses, and that doctors have no responsibility therefor.

But the defendant, Doctor Su, in his sworn answer to interrogatories, stated that *he did not contend any other person — (which includes the nurse) — was responsible for plaintiff's complication.* Having so testified, this admission remains in the case until the end, and it is too late now to recant and blame the nurse, even though he might swear to the contrary therein ten times or more, as *all testimony* (and more especially all conflicting testimony) must be construed most strongly against movant for summary judgment. *Holland v. Sanfax,* 106 Ga. App. 1, 5 (126 SE2d 442). Further, as a *party* to the case, where his testimony is ambiguous, it must be construed most strongly against him, and will deny him the right of recovery. *Southern R. Co. v. Hobbs,* 121 Ga. 428 (1) (49 SE 294).

In this case, therefore, there are two rules of law which require the testimony of Doctor Su, defendant and movant for summary judgment, construed most strongly against him. First, this is the rule in all summary judgment cases, as to the testimony of the *movant.* See *Sanfax,* supra. Next, it is the rule as to a *party* to a case, where his testimony is ambiguous or vague. See *Hobbs,* supra.

Some confusion exists as to these two rules of law because of the cases of *Burnette Ford v. Hayes,* 227 Ga. 551, 552 (181 SE2d 866); and *Burnette Ford v. Hayes,* 124 Ga. App. 65 (183 SE2d 78) (upon return of the case to this court). But what the Supreme Court there held is simply that regardless of which party would have the burden upon the trial before a jury, in motions for summary judgment the movant has the burden of proof, and his testimony, and all testimony on his side of the case, shall be construed most strongly against the movant. Thus, if the *respondent* in a summary judgment case should testify

in a vague and ambiguous fashion, the rule in the *Hobbs* case, supra, would give way to the rule in the *Sanfax* case; but where the party who testifies vaguely is also the movant in a motion for summary judgment case, this affords a double reason for construing his testimony most strongly against him.

7. Therefore, with admissions by defendant in the record that the plaintiff was injured while under his care as a patient; that he did not contend *any other person* was responsible for the patient's complications; that it was his guess that the reason for her complications was that she could have had a subcutaneous injection of vistaril (instead of intramuscular injection); and that he thought her trouble resulted from the injection, is sufficient to create issues for solution by the jury as to whether Doctor Su exercised reasonable care in looking after and protecting the patient as her condition required, and in failing to so protect her.

8. The attempt by Doctor Su to absolve himself of responsibility in other parts of his sworn testimony will not avail toward the grant of a summary judgment in his behalf, as the conflicting statements in his sworn testimony must be construed most strongly against him and most strongly in favor of respondent in said motion for summary judgment. *Holland v. Sanfax,* 106 Ga. App. 1, supra.

9. Whether a physician has used the requisite degree of care and skill for protection of his patient (Code § 84-924) is a question for determination by a jury. *Norton v. Hamilton,* 92 Ga. App. 727 (89 SE2d 809). And such physician is required to keep himself informed by proper examination as to the condition of the patient, and as to whether he has done so is a decision to be made by a jury. *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244); *Howell v. Jackson,* 65 Ga. App. 422 (2) (16 SE2d 45).

For the above reasons, I dissent from the judgment of reversal and insist that the lower court properly denied the motion for summary judgment.