**Billy HARRISON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 4–484A91.**

Court of Appeals of Indiana,
Fourth District.

Oct. 2, 1984.

---

Daniel L. Weber, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Billy Harrison is appealing a ninety-day penalty imposed upon him for a conviction based on possession of drug paraphernalia, a Class A misdemeanor (IND.CODE 35–48–4–8.3). He contends the State failed to provide sufficient evidence that the objects retrieved during a search of his apartment—a pipe, cigarette papers, two scales—were intended to be used for "enhancing the effect of a controlled substance." IC 35–48–4–8.3(a)(3). We agree and reverse the jury verdict based thereon.

## FACTS

On April 20, 1982, the Terre Haute Police Department served a search warrant on Apartment # 8, 1790 Maiden Lane Apartments. While a number of persons were present in the apartment besides Harrison, evidence indicated he was frequently at that address and made the rental payments for that particular apartment. Police found about 600 grams of marijuana throughout the residence and several items which led to the charge against Harrison that he

> "did then and there knowingly possess instruments, to wit: two pipes containing marijuana residue, two sets of scales, and two packages of cigarette papers used for rolling marijuana cigarettes, that he intended for use for *enhancing the effect of marijuana,* in violation of I.C. 35–48–4–8.3, I.C. 35–48–2–4(d)(13)."

Record, p. 16 (Emphasis added). He was also charged with possession of marijuana, Class D felony (IND.CODE 35–48–4–11) (1982) (amended 1983 Ind. Acts, P.L. 138 § 5) and maintaining a common nuisance, Class D felony (IND.CODE 35–48–4–13(b)). The jury found Harrison guilty of possession of marijuana and possession of paraphernalia but not guilty of maintaining a common nuisance. He was sentenced to two years and to ninety days respectively, both sentences to run concurrently. Harri-

son appeals only his conviction on the charge of possessing paraphernalia.[1]

The record positively reveals the following items were found in Harrison's apartment and were introduced into evidence: a small pipe with "residue" in it (Record, p. 132), two sets of scales (Record, pp. 134, 137), and cigarette wrapping papers (Record, p. 156). (Other items may indeed have been introduced into evidence, but we do not have the exhibits before us and the record is otherwise silent as to the identity of these other exhibits.) The foregoing is the sum total of the State's case regarding the paraphernalia charge against Harrison. For instance, there was no attempt to identify the residue in the pipe, nor was there any testimony as to how the subject items would enhance the effect of marijuana. At the end of the State's case, Harrison moved for a directed verdict of not guilty on the paraphernalia count for insufficiency of the evidence. After such motion was denied, Harrison presented his own case wherein he attempted to establish control of Apartment # 8 in another individual then rested. His motion to correct errors contends the denial of his motion for directed verdict was incorrect.

## DECISION

 Ordinarily, a criminal defendant waives his right to attack the denial of his motion for directed verdict when he proceeds to present evidence on his own behalf. *E.g., Sanders v. State,* (1981) Ind., 428 N.E.2d 23. Such is the posture of Harrison's case as he has presented his issue before us and in his motion to correct error before the trial court. However, his actual argument attacks not the motion for directed verdict but rather attacks the sufficiency of the evidence to support the jury's verdict. Indiana law clearly allows a criminal defendant to raise the sufficiency issue for the first time on appeal. Ind. Rules of Procedure, Trial Rule 50(A)(5); *Collins v. State,* (1977) 266 Ind. 430, 364 N.E.2d 750; *Tilton v. State,* (1981) Ind.

App., 416 N.E.2d 870. Thus, we may proceed to the actual question of whether the jury's verdict rested upon sufficient evidence.

 Our standard of review is time worn but ever constant. We review only that evidence most favorable to the verdict along with all the reasonable inferences to be drawn therefrom. It is not our province to gainsay the jury's assessment of witnesses' credibility nor its weighing of the evidence. If there is substantial evidence of probative value to support the jury's decision, we must affirm the judgment. *Collins v. State, supra.* In the instant case, we find the state's case upon the paraphernalia charge falls far short of the substantiality clearly required by our standard of review.

The statute under which Harrison was brought to trial creates the following offense:

"(a) *A person who possesses a raw material, instrument, device, or other object that he intends to use for:*

(1) introducing into his body a controlled substance;

(2) testing the strength, effectiveness, or purity of a controlled substance; or

(3) *enhancing the effect of a controlled substance;*

in violation of this chapter *commits possession of paraphernalia,* a Class D felony.

(b) However, *the offense is a Class A misdemeanor if the person:*

(1) *intends to use the raw material, instrument device, or other object in connection with marijuana, hash oil, or hashish;* and

(2) has not had a prior conviction of an offense involving marijuana, hash oil, or hashish."

IC 35–48–4–8.3. The italicized portion is the substance of the specific charge against Harrison. Pared to its basic elements, the State had to prove (1) Harrison

---

1. Harrison's appellate counsel is reminded that the statement of the case in an appellate brief must include a verbatim statement of the judg-

ment. Ind.Rules of Procedure, Appellate Rule 8.3(A)(4). It is not our function to search for it in the record.

possessed the pipe et al.; (2) they were adapted for enhancing the effect of a controlled substance; and (3) Harrison intended to so use them. *See Bradley v. State,* (1972) 153 Ind.App. 421, 287 N.E.2d 759 (predecessor statute, IND.CODE 35–24–1–2 (1971), required proof of (1) possession, (2) adaptation, (3) intent of use).

█ At the outset, we feel the State, by introducing the pipe and papers into evidence, had the beginnings of a charge under section (a)(1)—possession of paraphernalia used to introduce a controlled substance into the body. (There is no suggestion in the State's appellate brief that evidence supported a finding the scales in any way enhanced the marijuana.) But here, the State elected to charge that the paraphernalia was intended to be used to enhance the effect of the marijuana under section (a)(3). Here, the State failed in its proof that the seized evidence was adapted for the enhancement of controlled substances.

"Enhance," as ordinarily defined pursuant to Indiana's rules of statutory construction (see IND.CODE 1–1–4–1(1)),[2] means to "advance, augment, elevate, heighten, increase." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 753 (1976).[3] As the term is used by our appellate courts, "enhance" has just such connotations. When we address the "enhancement" of criminal sentences, we are obviously referring to an increase in penalty. For example, our supreme court refers to the "discretion to enhance" a sentence synonymously with the "discretionary power to increase" a sentence in *Lang v. State,* (1984) Ind., 461 N.E.2d 1110. *See Kalady v. State,* (1984) Ind., 462 N.E.2d 1299; *Gajdos v. State,* (1984) Ind., 462 N.E.2d 1017. We believe, therefore, that in section (a)(3), the legislature intended to proscribe items which would be used to increase, or augment, the effect of controlled substances on the human body.

Our definition is given credence by cases from other jurisdictions where the courts, in describing evidence regarding drugs, use "enhance" to describe an increase. For instance, the Illinois Court of Appeals described an expert's testimony in the following terms: "It was his opinion that the drug percodan should not be given to a patient being treated with heparin because it would enhance the anticoagulent effect of heparin." *Ziegert v. South Chicago Community Hospital,* (1981) 99 Ill.App.3d 83, 54 Ill.Dec. 585, 591, 425 N.E.2d 450, 456. The Oklahoma Court of Criminal Appeals used the term in the same manner: "He stated that there is a synergistic effect between alcohol and Librax; a phenomenon whereby one drug enhances the effect of the other and vice versa ...." *Findlay v. City of Tulsa,* (1977) Okla.Crim.App., 561 P.2d 980, 982. "Enhance" is used similarly in *Commonwealth v. Youngkin,* (1981) 285 Pa.Super. 417, 427 A.2d 1356, and in *Perano v. State,* (1983) 167 Ga.App. 560, 307 S.E.2d 64. Our definition is thus in line with our own current usage in the criminal sentencing context but also in line with its usage in the drug and narcotics context. Upon arriving at this conclusion, we are now compelled to determine whether the mere entry of the pipe and rolling papers into evidence was sufficient to establish they would have been used to enhance the effect of a controlled substance, presumably the marijuana in Harrison's apartment. We think not.

█ First of all, we believe it the better practice when striving for a paraphernalia conviction for the State to present evidence of how such equipment is used with controlled substances. In *Bradley v. State, supra,* the State provided testimony that an eyedropper with a needle and a bottlecap which had burns on the bottom were

---

2. IND.CODE 1–1–4–1(1):
 "Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

3. In BLACK'S LAW DICTIONARY 623 (rev. 4th ed. 1968), "enhanced" is defined as being "synonymous with 'increased' ...."

utilized for injecting narcotics into the human body. Similar testimony was introduced in *Dabner v. State,* (1972) 258 Ind. 179, 279 N.E.2d 797, and in *Stevens v. State,* (1971) 257 Ind. 386, 275 N.E.2d 12. With the increased public knowledge of marijuana and its manner of ingestion, one might be led to believe that testimony of the mere presence of a pipe and of rolling papers in the vicinity of quantities of marijuana would raise a presumption the items would facilitate burning the marijuana plant matter and thereby inhaling the smoke thereof. However, such process is described in section (a)(1) where the statute proscribes objects used for "introducing into [one's] body a controlled substance." Harrison was charged under section (a)(3), proscribing items which enhance the effects of the substances. Our definition of "enhance" prevents the two provisions from being synonymous nor can we ascribe to the legislature the foolish practice of proscribing the same behavior twice in the same statute. Rather, we must give effect to every word and clause in a statute, if possible, because it is not to be presumed there is no definite purpose to a legislative enactment. *See Combs v. Cook,* (1958) 238 Ind. 392, 151 N.E.2d 144. Therefore, unless the mere presence of the items before the jury would lead it to believe they would increase the effects of a controlled substance (in this case marijuana), the State's case failed in its proof.

When proving a drug's effects are enhanced, or increased, we are seeking proof that its impact upon the human body is made greater through the utilization of another substance or instrumentality. For example, in the case of a chronic schizophrenic, antipsychotic drugs were administered in conjunction with other drugs to increase the therapeutic value of the antipsychotic drugs upon the patient. *Guardianship of Doe,* (1984) 391 Mass. 614, 463 N.E.2d 339 (combining Lithium Carbonate with Prolixin). Again, in *People v. Person,* (1981) 102 Ill.App.3d 474, 58 Ill.Dec. 174, 430 N.E.2d 116, one witness explained that Pyrihenzamine was given with Talwin in order to increase the length of euphoria induced by Talwin. Also, the Georgia Court of Appeals heard testimony that Vistaril is used with morphine in order to increase morphine's pain-relieving qualities and thereby to decrease the actual amount of the morphine. *Su v. Perkins,* (1974) 133 Ga.App. 474, 211 S.E.2d 421; *see also Yoos v. Jewish Hospital of St. Louis,* (1982) Mo. App., 645 S.W.2d 177 (Vistaril with Demerol). Of a similar nature is the result of combining liquor with drugs. *See, e.g., Commander v. State,* (1978) Ala.Crim. App., 374 So.2d 910 (alcohol with shot of Demerol/Vistaril), writ quashed by (1979) Ala., 374 So.2d 921; *Fitzgerald v. Commonwealth,* (1982) 223 Va. 615, 292 S.E.2d 798 (beer and L.S.D.), *cert. denied Fitzgerald v. Virginia,* (1983) 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 469. The State in the instant case has failed to so clearly present such a case of enhancement.

Cases involving marijuana are not so clear-cut as those involving other more concentrated forms of drugs, hallucinogenics in particular. *See* IND.CODE 35–48–2–4(d)(13) (marijuana categorized as Schedule I hallucinogenic controlled substance). "The effects of marijuana are dose-related and refer to the mild form smoked in the United States." P. Lowinger, M.D., *Psychiatrists, Marijuana & the Law: A Survey,* MEDICAL TRIAL TECHNIQUE QUARTERLY 77, 78 (1975). Thus, an increase in the amount of marijuana ingested at a time would perforce increase the effects. We cannot say with certainty that the use of rolling papers or a pipe induces one to ingest more marijuana. As far as increasing the potency of the marijuana in order to enhance its effects, we must be aware that "[t]he effect of marijuana is due in part to the placebo ... effect which determines 24 to 76% of the effect of all drugs." *Id.* In addition, "[c]hemically, isomers (compounds similar in atomic weight but arranged differently and with different properties) of tetra-hydrocannabinol [THC] are responsible for many of the plant's effects." *Id.* The mere presence of the items before the jury would not logically tend to relay the information that

the pipe and the papers (much less, the scales) would increase a user's psychological response to the marijuana (the placebo effect) or that the isomers of the THC were affected significantly to alter and thereby increase the chemical potency present in the plant matter.[4] The State, having failed to present any other evidence that these items enhanced the effects of controlled substances besides their mere presence, failed in its proof. *But see World Imports, Inc. v. Woodbridge Township*, (D.N. J.1980) 493 F.Supp. 428 ("Power Hitter" and "buzzbee" described as enhancing effects of marijuana without descriptive evidence thereof.) The jury verdict based thereon was therefore contrary to law in the absence of substantial evidence to support it.

We reverse Harrison's conviction on possession of paraphernalia.

CONOVER and YOUNG, JJ., concur.

---

4. Instruments to do just that are specifically prohibited by the Model Drug Paraphernalia Act (*see* F.L. BAILEY & H.B. ROTHBLATT, HANDLING NARCOTIC & DRUG CASES (Supp. 1983) and by statute in Texas. In the Model Act, the following is forbidden:

"isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance."