David PIERCE, Appellant,

v.

**FORD MOTOR COMPANY, a Foreign Corporation, Appellee.**

No. 48134.

Court of Appeals of Oklahoma, Division No. 1.

June 8, 1976.

Rehearing Denied July 6, 1976.

Certiorari Denied Feb. 8, 1977.

Released for Publication by Order of Court of Appeals Feb. 10, 1977.

**646**

George P. Pitcher, Vinita, Sanders, McElroy & Carpenter, Tulsa, for appellant.

Green, Feldman & Hall by William S. Hall, Tulsa, for appellee.

ROMANG, Judge:

This is a manufacturer's products liability case. Plaintiff alleged in his petition that he was driving his father's Ford Pickup Truck (¾ ton), when in turning it to the left on a highway, the left front tire came off causing the pickup to be drawn to the left across the road and into a bridge abutment; that said accident and his resulting injuries were caused by a defect in design in that the wheels on the pickup did not have safety rims.

The answer filed by Ford Motor Company included general and special denials, and an allegation that the sole cause of the accident was plaintiffs driving the pickup into the bridge abutment where the left front tire was knocked off the rim.

Trial was had before a jury. At the close of plaintiff's evidence, defendant (Ford) demurred to the sufficiency thereof, and the demurrer was overruled. Ford then presented its evidence and rested. Plaintiff then put on rebuttal evidence and rested.

At the close of all the evidence, defendant renewed its demurrer to the evidence and moved for a directed verdict, which was sustained.

Plaintiff has appealed and here presents as his first proposition the following:

"The court erred in holding that there is a difference between a motion for directed verdict and a demurrer to the evidence and erred in directing a verdict in favor of the defendant and against the plaintiff."

A reading of the record reveals that the trial court did not specifically rule that there is a difference between a motion for a directed verdict and a demurrer to the evidence.

It is not uncommon in the trial of a lawsuit for a demurrer to plaintiff's evidence to be overruled, but at the close of the evidence of both sides, for the trial court to sustain a motion for a directed verdict when plaintiff's evidence remains insufficient to prove a cause of action. This practice inures to the benefit of the plaintiff, and does not mean that the trial court is holding that there is any particular difference between a motion for a directed verdict and a demurrer to the evidence.

In *General Motors Corp. v. Wolverine Ins. Co.*, 255 F.2d 8 (6th Cir. 1958), suit was brought for damages alleged to have been caused by the collapse of the left rear wheel on an automobile. In the opinion, the court said:

"In sum, the plaintiffs' evidence showed nothing more than that an accident had occurred and that immediately prior thereto the car had lurched and skidded and that the left rear section had dipped, and that when the car came to rest, the left rear wheel had become detached. Taking the most favorable view of the plaintiffs' evidence, the inference of negligence clearly 'stands equiponderant at best' with the contrary inferences relied upon by the defendant. It was, therefore, the duty of the district court to direct a verdict in favor of the defendant."

In the instant case, plaintiff testified as follows:

"A Well I started up and in shifting gears, shifted from third to fourth, it hesitated on shifting and when I yanked it again and pulled the wheel a little bit, and my right wheel dropped onto the shoulder and when I pulled it back upon the road just as it straightened up it dropped to the left side and pulled to the left, and I couldn't turn it back, and I ran into the guardrail and the bridge abutment.

\* \* \* \* \* \*

Q Alright, now what, where were you with reference to the bridge abutment when you turned into the left?

A Probably 300 to 400 feet from the bridge abutment.

Q And you say that you couldn't control the car?

A No.

Q What happened to the car?

A It pulled to the left and went on across the highway, and across the shoulder into a steel guardrail and went into the bridge abutment."

Also in the instant case, Mr. Pierce, Sr., father of plaintiff, testified as follows:

"Q Alright, and what was the condition of the left front wheel then?

A Well the left front wheel was bent, knocked back into the front of the cab, and the wheel was bent out of shape.

Q Alright, the, did the left front wheel have a tire on it?

A No sir.

Q Where was the tire please?

A Well, the tire was laying 120 feet back from the abutment of the bridge, along the guardrail.

Q How do you know it was a 120 feet back to where the tire was?

A Well, I paced the distance off that night, and I measured it the next day.

\* \* \* \* \* \*

Q Alright now how long is the guardrail?

A About 135 feet.

Q So there is about 15 feet of guardrail on northward from where the tire was resting?

A Yes sir."

■ Thus the physical fact of the left front tire being along the guardrail just 120 feet from the bridge abutment, is convincing proof that it did not come off 300 feet from the bridge abutment as plaintiff appears to contend. It is also convincing

proof that the left front tire was knocked off when the pickup hit the guardrail.

What was said in *General Motors Corp. v. Wolverine Ins. Co.*, supra, we find to be particularly applicable in the instant case, and we conclude that plaintiff's first proposition is without merit.

Plaintiff's second proposition reads:

"The trial court committed reversible error in refusing to qualify James W. Pierce as an expert and in excluding his testimony."

In support thereof, plaintiff makes broad general assertions without quoting from the record and without making any specific reference thereto.

A reading of the testimony of Mr. Pierce, Sr., reveals that he testified at length about what he observed at the scene of the accident within the hour in which it happened and during the next day. He was also allowed a wide latitude in testifying about safety rims. He took a number of pictures at the scene of the accident which were marked and introduced into evidence.

Mr. Pierce, Sr. had worked for over 28 years at the B. F. Goodrich plant, and had held such jobs as tire building, stock processing and tire testing. He was also engaged in farming and ranching during that time.

Plaintiff asserts in his Supplemental Reply Brief as follows:

"In the case at bar, James Pierce testified that he had sufficient knowledge of rims and tires to state that the left front tire of the plaintiff's vehicle was defectively designed because it did not have a safety rim. The Trial Court refused to allow James Pierce to testify as an expert witness because James Pierce was not an automotive engineer."

■ Once again counsel for plaintiff makes broad general assertions without any quotation or specific reference in the way of substantiation thereof. It takes more than broad general assertions of counsel on which to base the reversal of a case. It is not the duty of this Court to search the record in an effort to find support for counsel's assertions or in an effort to find reversible error.

In *City of Okmulgee v. Clark*, 425 P.2d 457 (Okl.1967), the court syllabus states:

"Whether a witness shall be permitted to testify as an expert rests largely in the discretion of the trial court and his decision upon this question will be reversed only where the error is clear."

We conclude that there was no clear error in the instant case in the excluding of the opinion testimony of Mr. Pierce, Sr.

■ Plaintiff's third proposition reads as follows:

"The trial court committed reversible error in excluding relevant testimony offered by plaintiff, and in particular in refusing to admit into evidence plaintiff's Exhibit No. 14 which was the safety rim."

Plaintiff asserts under his third proposition that the Ford pickup was defective in design because it did not have safety rims on the wheels. We have been cited no case authority wherein any court has so held, nor any safety standard so holding.

It is undisputed that Ford does not equip its pickups with safety rim wheels. However, there was no evidence that Ford pickup wheels are not safe in the absence of safety rims, which, according to the testimony, are for the purpose of helping to keep a tire on the wheel in the event of sudden deflation.

In *Kirkland v. General Motors Corp.*, Okl., 521 P.2d 1353, 1363, the opinion reads:

"By our adoption of manufacturers' products liability . . . we do not infer that the injury is of itself proof of the defect, or that proof of injury shifts the burden to the Defendant. . . .

" ' . . . [T]he mere happening of an accident raises no presumption of negligence on the part of the defendant.'

"Nor does it raise any presumption of defectiveness in the article involved in an accident.

"*First* of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough." (Emphasis theirs.)

Based upon our review of the record herein, we conclude that plaintiff's evidence was not sufficient to establish a case of manufacturer's products liability, and we further conclude that the trial court did not commit reversible error in excluding testimony offered by plaintiff or in excluding Exhibit No. 14.

AFFIRMED.

REYNOLDS, P. J., and BOX, J., concurs.